37 So.2d 130

## DE GRAAF v. STATE.

### 1 Div. 573.

Court of Appeals of Alabama.
June 15, 1948.

Rehearing Dismissed Aug. 3, 1948.

Further Motion Stricken Oct. 5, 1948.

138

Hybart & Chason, of Bay Minette, for appellant.

HARWOOD, Judge.

This appellant was indicted for the robbery of Ermie Beverly. His jury trial resulted in a verdict of guilty of assault with intent to rob.

According to the tendency of the testimony of Odelle Goode and Elmore Byrd, who, under their testimony, were accomplices of the appellant, they met the appellant in Mobile, on 6 September 1947, and he permitted them to ride with him in his truck to Robertsdale. These three men had known each other previously.

On the ride the three entered into a conspiracy to rob Ermie Beverly, the proprietor of a pool hall in Robertsdale.

Before reaching Robertsdale Goode and Byrd wanted to clean up, so appellant drove them out to Blackwater Creek about three miles distance from Robertsdale.

Appellant left Goode and Byrd at the creek, but returned about 7 P.M. and drove them into Robertsdale.

Thereafter appellant contacted them in about two hours in Robertsdale and told them that Beverly, the intended victim was in Postles' Place, in Robertsdale.

They then went to an ice plant, where appellant bought some ice and took it to his home about two miles out from Robertsdale.

In about 45 minutes they returned to the business section of Robertsdale and waited for Beverly to leave Postles. They could not see in Postles' Place from the point where they waited, and had left no one to watch for Beverly. However, in a few minutes they saw Beverly leave Postles.

Appellant then drove them to within about a block of where the robbery took place, and Goode and Byrd got out of appellant's truck. Appellant was to wait for them while they perpetrated the crime.

When Beverly came along Goode hit him with a stick then threw him down, and took his wallet containing $67.00. They then rejoined appellant and he drove them into Pensacola.

Ermie Beverly testified that after closing his business on the night of the robbery he went to Marshall's Place to drink beer. In a few minutes he was joined by the

A. A. Carmichael, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

appellant, with whom he had always been on friendly terms. Appellant bought him a bottle of beer and they conversed in a friendly fashion until it was closing time at Marshall's Place. They left this place together, but separated immediately, and Beverly did not see the appellant again that night.

Beverly then went on to Postles' Place where he stayed for about an hour, leaving there about 12:30 A.M. for his home.

Just before he reached his home and near a tree and some bushes, he was hit on the back of his head. After he had fallen he saw the man who had attacked him but did not recognize him. This man then took at least $60 from him.

A waitress at Marshall's Cafe testified as to having seen Beverly and appellant together in the Cafe until closing time on the night of the robbery.

Ira Turner testified that he knew appellant and had seen him drive a maroon Ford pickup truck. He also knew the spot where Beverly was robbed. On the night of the robbery, and near the place of its commission he saw a maroon Ford pickup truck stop and two men get out. This was between 10 and 10:15 P.M. The two men who left the truck walked toward the ice plant. The truck drove off down the road, but he did not know how far.

Sheriff Taylor Wilkins and Deputy Sheriff W. R. Duckworth testified as to statements made to them by the appellant in their investigation of this robbery. According to the testimony of these officers the appellant told them some five days after the robbery that he had met up with Goode and Byrd in Mobile and had driven them back to Robertsdale, first letting them out at Blackwater Creek and then later returning for them.

Again that night he ran into them at the bus station, and still later he rode them to Pensacola.

Under the above testimony of witnesses other than Byrd and Goode, tending to show appellant's proximity, chronologically and geographically, to the alleged offense, particularly the fact that this appellant, after midnight, drove Goode and Byrd from Robertsdale to Pensacola, was a sufficient corroboration of the accomplice's testimony to meet the requirements of Section 307, Title 15, Code of Alabama 1940. Its weight was for the jury. Segars v. State, 19 Ala.App. 407, 97 So. 747; Ross v. State, 74 Ala. 532.

The lower court therefore did not err in denying appellant's motion to exclude the State's evidence made at the conclusion of the State's case on the grounds that the testimony of the accomplices, Goode and Byrd, had not been sufficiently corroborated.

In his own behalf the appellant testified that after riding Goode and Byrd from Mobile he left them at Blackwater Creek to bathe. He then went to his home and ate supper. Then he returned to the Creek and, as they had requested, rode Goode and Byrd into Robertsdale. He left them at Klumpp's Filling station. He then returned to his home, first leaving some eggs at the ice plant. He and his wife then carried their baby by his mother's, and they went to a picture show. They left the show around 10 o'clock and he returned his wife to his mother's. He then went back down town to drink beer and get some ice. On this trip he again saw Goode and Byrd and rode them to the corner near which Beverly was robbed. This was about the time Ira Turner saw two men get out of a truck at this place. Appellant said he then went to the ice plant, bought ice, and proceeded on to Marshall's Cafe. There he saw Beverly, and the two drank beer together. When Marshall's closed he took the ice home, and while there fixed himself a sandwich. He then returned to Robertsdale, and was stopped by Goode and Byrd in front of the Bus Station. This was about 12:30 A.M. After about a fifteen minute conversation he agreed to drive Goode and Byrd to Pensacola, a distance of some 36 miles. This he did, letting the pair out near the railroad station in Pensacola. No charges were made by appellant for this trip.

The appellant strenuously denied that any agreement or conspiracy was ever made between him and his alleged accomplices as to committing any robbery, or

that he knew any robbery had been committed by this pair at any time during their contacts on that night. Instead of getting part of the proceeds of the robbery, as alleged by Goode and Byrd, appellant alleges he loaned Byrd $10 on the trip to Pensacola.

Under the testimony of Goode, Byrd and Mr. Beverly, witnesses for the State, it can only be inferred that the crime of robbery was fully consummated. Under the appellant's testimony, the only inference is that he, in nowise was connected with the crime. The jury's verdict, and the court's judgment entered pursuant thereto, however, found the appellant guilty of assault with intent to rob.

Appellant's motion for a new trial raises the question of the sufficiency of the verdict under the law and the evidence of this case.

In the quite recent case of Edwards v. State, 33 Ala.App. 386, 34 So.2d 173, this court, through Bricken, Presiding Judge, held that where all the evidence adduced shows either the complete, consummated crime, or no offense at all, a jury is warranted only in returning a verdict of guilty of the offense charged, or a verdict of not guilty, depending of course upon whether the jury accepts the evidence presented by the State, or by the accused. On this point Judge Bricken wrote:

"As stated the only evidence adduced upon the trial of this case as to the commission of the alleged offense by appellant was that of the named injured party, which evidence was unsupported by any other evidence in the case. Said evidence tended to show that the crime of robbery itself was completed, that is to say under said evidence the crime was fully consummated. However the verdict of the jury acquitted the defendant of the offense of robbery, and, as noted, found the defendant guilty of an assault with intent to rob. Said verdict was unsupported by the evidence and was manifestly a compromise verdict which the law does not approve or contemplate. It also shows the exercise of a discretion by the jury not based upon the law or facts; hence in law, was contrary to

the law and the evidence, as contended by appellant.

"Section 323, Title 15, of the Code of Alabama 1940, provides:

"'When the indictment charges an offense of which there are different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto, or of an attempt to commit the offense charged; and the defendant may also be found guilty of any offense which is necessarily included in that with which he is charged, whether it be a felony, or a misdemeanor.'

"Section 42, Title 14, of the Code of Alabama 1940, also provides:

"'Upon the trial of an indictment for any offense, the jury may find the accused not guilty of the offense charged in the indictment, but, if the evidence warrants it, guilty of an attempt to commit such offense, without any special count in the indictment for such attempt.'

"Neither of said sections, however, can be construed to vest in the jury a pardoning power. Said sections properly construed mean where the evidence fails, under the required rule as to measure of proof, to show that the actual offense charged in the indictment has been committed as charged, then, if the evidence warrants it, the provisions of such sections may be applied and a conviction had for a lesser offense which is necessarily included in the offense with which he is charged."

In Broadhead v. State, 24 Ala.App. 576, 139 So. 115, 117, this court held:

"An attempt to commit a crime consists of three elements: (1) The intent to commit the crime; (2) performance of some act toward the commission of the crime; and (3) the failure to consummate its commission. In other words, in order that there may be an attempt to commit a crime, whether statutory or at common law, there must be some overt act in part execution of the intent to commit the crime, but which falls short of the completed crime; the difference between attempt and commission being that the act or step fails to produce the result intended.

"A criminal attempt to commit a crime consists of two important elements: First, an intent to commit the crime; and, second, a direct ineffective act done towards its commission. It follows that a failure to consummate the crime is as much an element of an attempt to commit it as the intent and the performance of an overt act towards its commission; and, where a crime has been actually committed, the second element or ingredient of an attempt is necessarily lacking, and a prosecution or conviction for an attempt to commit a crime could not be sustained for this reason."

A similar doctrine was also enunciated in Brazier v. State, 25 Ala.App. 422, 147 So. 688, and Hill v. State, 27 Ala.App. 160, 167 So. 606.

We have found no decision by our Supreme Court on this point, though in Kelly v. State, 235 Ala. 5, 176 So. 807, it was held that while an attempt to commit a crime is impliedly included in an indictment charging the crime, though it makes no reference to an attempt, it is proper to refuse a charge as to an attempt when the evidence did not support such an offense.

An "assault with intent" is an attempt plus something else. The attempt or offer is the basic ingredient of every assault. The chief difference between an assault and an attempt is that an assault presupposes a present apparent ability to commit the offense attempted. Lane v. State, 85 Ala. 11, 4 So. 730; People v. Stanton, 106 Cal. 139, 39 P. 525; 40 Yale L.J. 53, at p. 65. In general therefore the legal principles pertaining to attempts are equally applicable to assaults.

There is substantial authority to the effect that when an accused is found guilty of an attempt under an indictment charging a crime, he is not thereby prejudiced, since the jury by their verdict have disregarded his defense, and he is in no position to complain that the jury, having the power under the evidence presented to render a verdict of guilty of the greater offense charged saw fit to render a verdict of guilty of a lesser included offense. See Calicoat v. State, 131 Miss. 169, 95 So. 318 and authorities therein collected.

Five states provided by statute that an accused may be found guilty of an attempt even though the evidence establish the consummation of the offense charged. See Ariz.Code Ann.1939, Sec. 43-6108; Penal Code of Calif.1937, Sec. 663; Idaho Code Ann.1932, Sec. 17-305; Rev.Code of Mont. 1935, Sec. 11590; Nev.Comp.Law, 1929, Sec. 9975.

However, there is also substantial authority in accord with the doctrine announced by this court in the Broadhead, Hill, Brazier, and Edwards cases, supra. See 14 Am.Jur.Criminal Law, Section 65, note 12. It also appears that such was probably the doctrine of the common law. Regina v. Nicholls, 2 Cox, C.C. 182.

Again we have found five states whose statutes preclude a conviction of an attempt or an assault with intent where the evidence discloses consummation of the charged offense. See Georgia Code 1933, Sec. 27-2508; Gen.Sts. of Kan.1935, Sec. 21-102; Rev.Sts.Mo.1939, Sec. 4836, Mo. R.S.A.; Okla.Sts.1941 T. 21, Sec. 41; Miss. Code 1942, Sec. 2018.

The Mississippi statute, supra, reverses the doctrine developed judicially in Calicoat v. State, supra.

A defendant is entitled to be tried upon the issues made by the evidence. When under the evidence presented only a verdict of guilty, or a verdict of not guilty, is rationally supported, it cannot be said, with confidence, that a verdict reflecting a misleading instruction to the jury that they may return a verdict of guilty of a lesser offense which is unsupported by the evidence, is harmless. Such an assertion overlooks the practical court room fact; well recognized by those familiar with jury trials, that juries are sometimes prone to compromise. Where some of the members might, under the evidence presented, hesitate or refuse to render a verdict of guilty of the serious offense charged, with its accompanying heavy penalty, such hesitation may be dissipated and overcome if instructions be given by the trial court inviting a verdict of guilty of a lesser offense carrying with it a lighter penalty.

Clearly in such a case an accused is prejudiced for his conviction results from a compromise, and is not a true verdict rendered on the evidence presented.

■ Under Section 389, Title 15, Code of Alabama 1940, the duty is placed upon us to consider all questions apparent on the record and render such judgment as the law demands. This section makes the right of appeal in criminal cases one of substance imposing on the court a duty to search the record for errors. Wesson v. State, 238 Ala. 399, 191 So. 249.

■ The verdict in this case, a part of the record, is, under the doctrine established by the decisions of this court cited above, unsupported by the evidence presented. The cause must therefore be reversed.

■ The verdict of the jury finding this accused guilty only of assault with intent to rob acquits him of the charge of robbery. It is only this offense that is spelled out by the State's evidence. Further prosecution is effectively barred by basic legal principles. An order of rendition is therefore indicated. It is therefore ordered that this case be reversed and rendered and the defendant be discharged from further prosecution.

Reversed and rendered.

On Rehearing.

HARWOOD, Judge.

Appellant has filed a motion to dismiss this application for rehearing on the grounds that the paper, labeled a Brief and Argument, is in no sense a brief, and therefore the application is not accompanied by a brief as required by Supreme Court Rule 38, Code 1940, Tit. 7 Appendix.

For the purposes of this opinion the pertinent portions of Rule 38 are as follows:

"All applications for rehearing must be filed with the Clerk of the court, accompanied by brief for the applicant * * *. No application shall be received or filed which is not presented in strict compliance with this rule, * * *."

The entire paper labeled a "Brief and Argument" filed in this cause by the applicant is as follows:

"Brief and Argument

"The Court of Appeals has reversed and rendered the judgment of the trial court in this case, for the reason that appellant, Clyde De Graaf, charged with robbery, was found guilty of assault with intent to rob and not robbery.

"True, the only defense presented by appellant was that he was not a party or conspirator to commit the crime of robbery. It is also true that the evidence presented by the State shows that the crime of robbery was completed. It is insisted, however, that to hold that the jury's verdict is a compromise verdict not supported by the evidence, and to discharge the defendant results in a miscarriage of justice.

"Whatever the rule of law is or should be under this state of evidence, the result —discharge of a defendant found guilty by a jury—cannot be correct.

"On this rehearing we insist on each and every point presented by the State in its original brief.

"We also request the Court of Appeals to state as a fact in its opinion that the trial judge, in his oral charge, instructed the jury both on the crime of robbery and on the crime of assault with intent to rob (R. 78). We make this request in order that there will be no doubt as to whether or not the Supreme Court may consider this fact if certiorari is applied for.

"We also request that it be noted in the opinion that defense counsel made no objection to this instruction (R. 78).

"It is submitted that this cause should be affirmed."

■ Under the provisions of Section 389, Title 15, Code of Alabama 1940, no assignment of errors is necessary in a criminal case, and it is the duty of the appellate courts of this state to consider all questions apparent on the record. Under this section it is unnecessary even to file a brief in a criminal case. Hymes v. State, 209 Ala. 91, 95 So. 383; Bertalsen v. State, 20 Ala.App. 539, 103 So. 480.

■ If Supreme Court Rule 38 is to have any field of operation in criminal cases however, the conclusion is necessary that Section 389, supra, has application to the consideration of criminal cases on original submissions, and not to motions for rehearings in such cases. Indeed, our Supreme Court has specifically held that Rule 38 obtains in criminal as in civil cases. Caraway v. State, 207 Ala. 588, 93 So. 548.

■ After an appellate court has discharged its duty by full consideration of the questions raised in a record, and has issued its opinion, then clearly it is the duty of an applicant challenging the correctness of that opinion to point out clearly and intelligently the errors which he alleges infect the opinion and decision. The only way this can be done is of course in a proper brief filed in support of the application for rehearing.

While we do not think it entirely applicable, because of the limited scope of an application for a rehearing as distinquished from the broad sweep of an original submission, yet Supreme Court Rule 10, pertaining to the contents of an appellant's brief furnishes some basic criteria for determining the adequacy of the alleged brief filed in this proceeding. Among other things it is set forth in Rule 10 that an appellant's brief "shall contain, under a separate heading of each error relied on, separately numbered propositions or points * * * together with the authorities relied on in support of them and in citing cases, the names of parties must be given, with the book and page where reported."

The alleged brief filed by the applicant is entirely defective in formal construction. Regardless, an analysis of this paper discloses that the only allegation of error it asserted is that the conclusion reached by this court that the defendant be discharged results in a miscarriage of justice, and cannot be correct.

After careful consideration and study we have of course reached a contrary conclusion. A mere statement of opinion by counsel, unsupported by any citation of authority, that our opinion is incorrect, serves no useful purpose in so far as enlightening this court is concerned. Any other view by counsel for an applicant would be surprising, and disastrous to his application.

It is further noted that in the alleged brief counsel sets forth that: "On this rehearing we insist on each and every point presented by the State in its original brief."

■ Having already carefully considered each and every point presented by the State in its original brief, this attempt to refile such brief in no way facilitates the work of this court. In a brief on rehearing the alleged errors in an opinion should be specifically and clearly called to the court's attention. Refiling in the Supreme Court of briefs filed on submission, and in support of application for rehearing in this court, is not permitted. Ex parte Locklear, 205 Ala. 236, 87 So. 712. The same principle is applicable to counsel's efforts in this instance in his insistence on reconsideration of each and every point presented in his original brief.

■ While the appellate courts of this State have been inclined toward a liberal construction of Rules 10 and 38 in determining the adequacy of briefs, yet as stated by the Supreme Court in Ogburn-Griffin Grocery Company v. Orient Insurance Company, 188 Ala. 218, 224, 66 So. 434, 435, "we cannot permit them [the rules] to be ignored or entirely disregarded, however innocently, for they were framed and adopted to facilitate the business and be an aid to the court in its prompt and orderly disposition, a result which the profession and those whom it represents are greatly interested."

■ The office of an appellate brief is to aid an appellate court to understand quickly the issues involved, and by points, propositions and argument, supported where possible by citation of authority, present to the court the questions in controversy. Measured by this test, it is apparent that the paper filed in support of this application, under a most liberal construction, cannot be characterized as a brief.

It is therefore the conclusion of this entire court sitting en banc, that the mo-

tion to dismiss this application for rehearing on the grounds asserted is well taken, and dismissal is so ordered.

Motion to dismiss application for rehearing because of noncompliance with Supreme Court Rule 38 granted.