53 So.2d 595

**GAUTNEY v. STATE.**

**4 Div. 147.**

Court of Appeals of Alabama.

March 13, 1951.

Rehearing Denied May 29, 1951.

E. O. Baldwin, of Andalusia, and J. C. Fleming, of Elba, for appellant.

A. A. Carmichael, Atty. Gen.; and Wm. S. Halsey, Jr., Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant, Buford Gautney, was indicted jointly with Dawson Beasley and Ora Lee Kilpatrick. The indictment charged that they robbed Bill Powell of forty dollars. A severance was demanded and granted. The trial was had in the Circuit Court of Covington County and resulted in a verdict of assault with intent to rob. The court fixed defendant's punishment at 7 years in the penitentiary.

The evidence tended to show that defendant, with several others, was drinking beer in the Rendezvous Cafe at Opp. Shortly before midnight defendant invited Bill Powell, the party assaulted, outside for a drink of whiskey. Powell replied that he would go to the restroom with defendant, but he did not want any whiskey. They walked out the door together and turned East between the Rendezvous and Bryant's Hamburger stand. Lights were burning on the front of the building but it was dark at the side and to the rear. Powell remembered walking out the door a step or two behind Gautney and starting around the side of the building when suddenly he "heard a dynamite shot and a flash of lightning." He regained consciousness at his Mother's home sometime later with a wound on his head which was treated by a doctor.

Several State witnesses observed Powell and defendant leaving the Cafe together and saw defendant return alone in three to five minutes. Ten or fifteen minutes later he left with Beasley and Kilpatrick.

About 12:30 Powell was found lying on the ground 15 feet from the rear of the building. There was blood on his face or head. Next morning the police found a piece of pipe with blood on it eight feet from the southeast corner of the Rendezvous. There was a puddle of blood about 2 feet from where the rolling store, in which defendant was riding, pulled off the night

before. Human tracks led from the blood to the pipe. Powell's empty wallet was found 100 feet on the west side of the Bryant Building.

Powell had been drinking whiskey during the afternoon and had joined defendant, Beasley and Kilpatrick at Bub Deal's Cafe around 8:00 o'clock. From there they made a tour of the night spots in and around Opp, drinking a considerable amount of beer in each place. The four men were traveling in a rolling store driven by Kilpatrick.

State's witness Buck Holmes was present at Danley's, the last place visited by Powell and the three indictees before going to Rendezvous. He saw Powell take money from his wallet to pay for beer and observed that the wallet contained a considerable amount of money. At that time one of the three, defendant, Beasley or Kilpatrick, said, "Bill, I wouldn't be showing my money around like that, somebody might hit you in the head and get it."

Powell had no recollection of seeing his wallet after paying for the beer at Danley's place. He testified that he had about $50.00 when he began his tour of the beer joints. He was carrying his billfold in the pocket of his overall bib. This pocket was not fastened in any way. No other witness remembered seeing his wallet after the episode at Danley's except State's witness Harrison who testified he saw Powell take money from his billfold at the Rendezvous.

Defendant, Beasley and Kilpatrick were searched by officers immediately after Powell was found, and again at the jail next morning. Three dollars were found on the person of defendant, and Beasley and Kilpatrick had a very small sum of money.

Defendant offered testimony by a number of witnesses, including himself and the two men indicted with him. They admitted being with Powell during the tour of the night spots. They denied making any statement or hearing a statement made by anyone at Danley's place concerning Powell's money. Defendant denied making an assault upon Powell. He admitted leaving the Rendezvous with Powell, but insisted he did not ask him to leave the building.

Defendant stated he had started outside to the restroom when Powell said he was going to the restroom too. When they were about half the length of the building defendant stopped to urinate and Powell continued toward the restroom. Defendant returned to the Cafe and did not see Powell again.

The question of the sufficiency of the evidence to sustain the judgment of conviction was raised by request of the affirmative charge and a motion for a new trial.

The point most strongly urged for appellant is that the verdict of the jury was contrary to the law and the evidence, in that, if the State's theory of the case could be believed the defendant was guilty of robbery if he were guilty of any offense, and the jury exceeded its authority in convicting him of an assault with intent to rob. He insists that the jury in this case rendered a compromise verdict such as was denounced by this court in the case of Edwards v. State, 33 Ala.App. 386, 34 So. 2d 173, and in the more recent case of De Graaf v. State, 34 Ala.App. 137, 37 So.2d 130.

This insistence cannot be sustained. In the De Graaf and Edwards cases the evidence was without conflict that the offense of robbery was fully consummated. In each of those cases the victim testified positively that he was robbed of a specific sum of money. In the instant case there was no direct proof of any money having been taken from Powell. Admittedly, Powell was drunk. He did not know whether he was in possession of his wallet or whether he had any money at the time he was assaulted, and he so testified.

The jury could have reasonably inferred from the evidence that Powell had spent or lost his money before the assault was made. From the evidence submitted and the inferences reasonably to be drawn therefrom we think the jury could rightly conclude that although defendant might not have been guilty of robbery, he did some act in that connection which amounted to an assault with intent to rob. The weight and sufficiency of the evidence was for the jury and the court properly refused the general charge. Hargrove v. State, 147

Ala. 97, 98, 41 So. 972; Emerson v. State, 30 Ala.App. 89, 1 So.2d 604; Smith v. State, 23 Ala.App. 488, 128 So. 358; certiorari denied, 221 Ala. 217, 128 So. 359.

In the case of Thomas v. State, 91 Ala. 34, 9 So. 81, Mr. Justice McClellan, speaking for the court, had this to say:

"The offense (of robbery) is against both the person and against property. * * * in so far as it is against property, it consists of manucaption animo furandi. If there be violence or putting in fear, however aggravated, without a taking and asportation of property, there may be an assault, or assault and battery, or an assault with intent to rob, but no robbery".

■ It was not improper to allow the Chief of Police to testify as to the finding of the wallet and pipe, and to describe the surroundings at the scene of the commission of the felony the morning following the assault. Eden v. State, 24 Ala.App. 37, 129 So. 797; Holland v. State, 24 Ala.App. 199, 132 So. 601; Allbritton v. State, 29 Ala. App. 1, 191 So. 268; Smitherman v. State, 33 Ala.App. 316, 33 So.2d 396.

We find no error in the record and the judgment of the circuit court is affirmed.

Affirmed.

## On Rehearing.

On application for rehearing counsel for appellant requests that a "fuller statement" of the facts be set out. An effort was made to set out all the material facts in the opinion; and a restatement of the facts would serve no good purpose.

Appellant's counsel also requests that we detail the testimony from the time the appellant was arrested "as shown by the officials who arrested him;" and the testimony as to the search of appellant and the result of such search. A reference to the transcript discloses no testimony on the part of the officers as to the arrest and search of defendant. We had thought the matter of the amount of money found on defendant and the two indictees sufficiently covered in the original opinion. The defendant had in his possession, as disclosed by the testimony, the sum of $3.00; Beasley had $7.00 and Kilpatrick had $1.25.

■ As stated in the original opinion, Powell was drunk. He did not know whether he had any money when he walked out of the Cafe; neither did he know who assaulted him. The evidence against defendant was circumstantial. We are of the opinion that sufficient facts and circumstances were shown from which the jury could reasonably infer the crime had been committed and that the defendant was the guilty agent.

. Insistence is. also made that the trial court committed reversible error in allowing State's witness Porter Moore to testify to tracks found near the Rendezvous Club. The ruling of the court on this question was so manifestly free from error we considered a detailed discussion unnecessary. The record discloses the following on direct examination:

"Q. (By Mr. Boswell) Now did you see any tracks, rolling store tracks or any tracks at all on the back of that building? A. I tracked the tracks from the puddle of blood.

"Mr. Fleming: Which kind of tracks, human tracks or wagon tracks of what? A. Well, the rolling store tracks were there, you see, where it pulled off driving westward and about two feet from the tracks from where the rolling store pulled off there was a puddle of blood.

"Mr. Fleming: We object to the rolling store tracks. That is a conclusion.

"The Court: If he knows they were rolling store tracks.

"Mr. Fleming: I want to know what kind.

"The Court: He is telling you.

"Mr. Fleming: We object to the proposition they were rolling store tracks.

"The Court: Overrule it. You asked the question.

"Mr. Fleming: We except.

"A. From the puddle of blood about three feet from the tracks the truck track, or rolling store tracks, there was a track that led to the corner.

"Mr. Fleming: We object again.to the rolling store tracks.

"The Court: Overrule it.

"Mr. Fleming: We except.

"A. I tracked the track from the puddle of blood to the corner of the building on the east side.

"The Court: I am letting that in on the strength of Mr. Fleming's question. He asked the question himself and he is answering the question, and I am overruling the objection on that basis.

"Mr. Fleming: We object on the ground it is a conclusion.

"The Court: All right, you asked the question. I overrule it.

"Mr. Baldwin: No, sir, we didn't ask the question.

"Mr. Fleming: We object to it and we except."

■ The answer of the witness was responsive to the question propounded by the Solicitor, without objection. The other answers were elicited by the defendant's own questions. Even had there been a proper motion the defendant was not entitled as a matter of right to have the answers excluded. Toliver v. State, 94 Ala. 111, 10 So. 428; Wright v. State, 108 Ala. 60, 80 So. 941; Smith v. State, 19 Ala.App. 325, 97 So. 157.

Application overruled.