The appellant was indicted, tried and convicted for robbery. He appealed from that final judgment to this Court.
In the trial below Steven Swindle testified that on October 24, 1974, he was employed by David and Company and worked alone from 12:00 o'clock midnight until 8:00 a.m. About 2:45 a.m., while in the back of the store, he saw three men come in; the first one grabbed him and threatened him with a piece of plastic pipe, and then he was shoved down on the floor. All three men were black and there were no other people in the store. Swindle stated further that the first one grabbed him, another one pulled a shotgun from under his coat and pointed it at him, and another one went to the cash register and took $800.00 out of it; that Harvey Lee Bobo and David Crawford were two of the three men in the store at the time; Crawford had the shotgun and pipe and Bobo got the money from the cash register. He further testified that Steve *Page 1059 
Weller owned the store and its contents, including the money taken from the cash register, and that the three men were in the store three or four minutes; that he could not positively identify the appellant as being one of the three men in the store at the time in question. The witness stated that the man other than Crawford and Bobo had the shotgun pointed at him.
Alan Fondren testified in substance in the trial of the appellant; that he was Investigator for the Police Department; that he saw appellant at the police station on October 24, 1975; that at that time the appellant made a statement to him. After proof that the Miranda warning was given to appellant, and further proof that the statement made by appellant was voluntarily and freely given without threats, coercion, intimidation, or hope of reward, the witness was permitted to testify to the contents of the statement made by appellant as follows:
"Q And what did he say to you at that time?
 A He said he was with two other people, Harvey Bobo and David Crawford, and he said he went out to the Austin Arms Apartments to see a friend of his, Carlos Cameron, and he said he left the other two boys in the car and went up and knocked on the door of Cameron's residence and he stated he wasn't at home. And he came back to his car and the other two boys were gone out of the car. And he waited on them for a short time and they came running back to the car saying something about, `let's go, there has been a robbery,' and he said he cranked up the car and took off.
Q Did you question him what type car he was in?
A Yes, sir.
Q What type automobile did he say it was?
A A 1972 Chevrolet.
Q Did he say what color it was?
A White.
 Q Did he say who was driving it or who owned the car?
A He said it was his car.
 Q Now did you question him concerning a sawed off shotgun?
A Yes, sir.
Q Alright. What did he say, if anything?
 A He said it was the type gun that it would break down in three pieces and that it was a short barrel gun with something like a pistol grip on it and the kind of gun that was made up pretty fancy.
 Q Did you question him concerning when he first saw this shotgun?
A Yes, sir.
Q What did he say in answer to that?
 A He said something about early in the day when they got together he noticed them when he got in the car, they had it in a brown bag, something like an army bag or convas bag.
 Q And did he give a description of it at that time? I will ask you to state whether or not it was broken down or in one piece.
A I believe he said it was broken down."
This witness further testified that the appellant said he saw the shotgun that night when they (the other two) put it into the car; that it was in some sort of bag.
James Harry Montgomery testified in substance that on November 20, 1975, he went to Detroit, Michigan, to bring the appellant back to Alabama. This witness was a Deputy Sheriff and after giving testimony that when they got in the car for the return trip to Alabama he gave the Miranda warning to the appellant and the appellant gave a voluntary statement to him on the way back from Detroit. The witness went in details and facts surrounding the voluntariness of the statement. The law was fully complied with in that respect. He then testified the appellant made the following statement to him:
"Q And what was that statement?
 A He said that two of his friends had asked him to go over to David and Company over on University Boulevard, that they wanted to buy something. *Page 1060 
And he carried them to the store and they went inside and he stayed outside in the car. And he didn't know what was going on until they came out of the store.
Q He stated to you he waited in the car?
A Yes, sir."
All of the evidence was offered by the State. The appellant did not testify and he did not submit any other evidence.
The appellant contends the trial court erred in overruling his motion to dismiss the State's evidence and for a directed verdict.
There was sufficient proof of the corpus delicti. There was also evidence that three persons took part in the robbery; that the three were inside the store, two of whom were identified by the witness, Steven Swindle, but Swindle could not identify the third person as being the appellant. That witness testified the unidentified person had the shotgun and held it on him during the robbery.
In the first statement of the appellant, admitted in evidence and set out in his opinion, the appellant stated in substance that he carried Harvey Bobo and David Crawford to the Austin Arms Apartments. Other evidence shows this apartment building was very near the scene of the robbery — one or two doors from the store where the robbery took place. It was also shown that the said Bobo and Crawford were two of the three people that took part in the robbery.
In the statement referred to, the appellant said that he entered the apartment building and when he came back to the car Bobo and Crawford were gone out of the car; that he waited a short time and they came running back to the car and said there had been a robbery; that one of them had a fist full of money and that he cranked up the car and took off. He further said in that statement that Crawford and Bobo had the shotgun in a brown bag when they got together early that day.
In the second statement of his introduced evidence as set out above he said, in substance, that he took them to the store where the robbery took place and they went inside and he stayed outside in the car.
Those statements are substantial evidence of his guilt when taken in connection with the evidence of the robbery inside the store, and presented a jury question. There was substantial evidence that he aided and abetted in the commission of the offense.
T. 14, § 14, Alabama Code of 1940, recompiled in 1958, reads as follows:
 "The distinction between an accessory before the fact and a principal, between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."
Under the evidence in this case, even if the appellant was not the third man inside the store engaged in the robbery, the jury was justified in deciding that appellant knew what was going on; that he aided and abetted in the commission of the robbery by transporting the other participants in the robbery to the scene of the robbery, served as a "Lookout" and drove the "get away car." That was a jury question that was justifiably answered by the verdict of guilty returned by the jury. See Bobo v. State, 56 Ala. App. 622, 324 So.2d 336.
The appellant also contends that there was no evidence of flight on the part of the appellant and that counsel for the State should not have been permitted, over appellant's objection, to have argued that there was such flight, and that the trial judge should not have instructed the jury on the subject of flight for the same reason.
The argument of District Attorney objected to, as set out in the record is as follows:
 "MR. RANDALL: We submit there was flight in this case and that the defendant had to be brought back."
* * * * * * *Page 1061 
 "MR. RANDALL: That is not correct and we have shown flight and we would like for the jury to be allowed to consider that."
On that subject the trial judge instructed the jury as follows:
 "* * * If you think from all the evidence in this case that the testimony shows he was fleeing or running off from the crime, so to speak, you have a right to consider that but it is up to you to give whatever weight you might give it if you should find there was flight. I am not saying there was flight, but that is for you to decide from all the evidence in this case. It is really up to you, * * *."
In White v. State, 111 Ala. 92, 21 So. 330, in quoting fromBowles v. State, 58 Ala. 335, the court said:
 "`All evasions or attempts to evade justice, by a person suspected or charged with crime, are circumstances from which a consciousness of guilt may be inferred, if connected with other criminating facts. Of themselves they may not warrant a conviction, but they are relevant as evidence, and the weight to which they are entitled it is the province of the jury to determine, under proper instructions from the court. * * * Flight for which no proper motive can be assigned, and which remains unexplained, is a circumstance, all authorities agree, it is proper to submit to the jury, in connection with other evidence tending to show the guilt of the accused. * * *'"
In Tiner v. State, 279 Ala. 126, 182 So.2d 859, the court stated:
 "Flight, though not conclusive, is usually evidence of guilt, and if a suspect flees at the approach of officers having knowledge of, or reasonable cause to believe, that a felony has been committed, there can be no doubt but that such conduct furnishes a reasonable cause for believing that the suspect committed the felony."
Therefore, the argument of the District Attorney and the charge of the court in the case before us were in line with the law if there was any evidence of flight.
The robbery having been shown by the evidence, coupled with the statement of the appellant, "* * * they came running back to the car * * * that he saw one of the boys with a fist full of money and that he cranked up the car and took off. * * *"; and, also with the facts that he was some months later found in Detroit, Michigan, and the fact that his actions in the meantime remains unexplained, is clearly evidence of flight which should have been submitted to the jury. The argument of the District Attorney and the charge of the court is without error.
In the case before us the trial judge did not instruct the jury on any offenses other than robbery and no objection or exception to the charge was made or taken in that respect. The appellant did not submit any requested written charge or charges to the trial judge. However, on this appeal the appellant contends this failure to charge on other offenses embraced in the indictment is reversible error.
In De Graaf v. State, 34 Ala. App. 137, 37 So.2d 130, we find this statement of the law:
 "In the quite recent case of Edwards v. State [33] Ala. App. [386], 34 So.2d 173, this court, through Bricken, Presiding Judge, held that where all the evidence adduced shows either the complete, consummated crime, or no offense at all, a jury is warranted only in returning a verdict of guilty of the offense charged, or a verdict of not guilty, depending of course upon whether the jury accepts the evidence presented by the State, or by the accused. On this point Judge Bricken wrote:
 "`As stated the only evidence adduced upon the trial of this case as to the commission of the alleged offense by appellant was that of the named injured party, which evidence was unsupported by any other evidence in the case. Said evidence tended to show that the crime of robbery itself was completed, that is to say under said evidence the crime was fully consummated. However the verdict of the jury acquitted the defendant of the offense of *Page 1062 
robbery, and, as noted, found the defendant guilty of an assault with intent to rob. Said verdict was unsupported by the evidence and was manifestly a compromise verdict which the law does not approve or contemplate. It also shows the exercise of a discretion by the jury not based upon the law or facts; hence in law, was contrary to the law and the evidence, as contended by appellant."
The offense of robbery was clearly proven by the evidence without contradiction in the evidence. The trial judge of his own motion is not required to charge on an offense for which the jury could not legally convict.
There are other sound legal reasons why the failure to charge on inferior offenses embraced in the indictment is not error. One may not object to something not in the charge and certainly not for the first time on appeal.
We have performed our statutory duty to search the record for error and have found no error.
It is, therefore, ordered that the judgment of the trial court be and is affirmed. Bobo v. State, supra.
The foregoing opinion was prepared by Supernumerary Circuit Judge L.S. Moore, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; opinion is hereby adopted as that of the Court. The judgment is hereby
AFFIRMED.
All the Judges concur, except CATES, P.J., who was not sitting.