LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty of robbery in the first degree of Thomas J. Wilson. The court fixed his punishment at imprisonment for seventeen years and sentenced him accordingly.
According to the testimony of the alleged victim, a farmer, he was in the Ensley area of Birmingham on May 23, 1980, selling vegetables and meat from a pickup truck with a camper on it. While he was in the vicinity of Avenue G and Thirteenth Street, two men whom he had not previously known, talked with him in concert about buying some of his produce. One was the defendant. The other was called “Chaverist.” The witness continued:
“Q. What if anything did you say to Richburg and the other man?
“A. Before — before this time, I had told them — when they had asked and told me their grandmother wanted some greens, and they wanted a ride, I told them I hoped they didn’t plan anything bad because I had a loaded gun.
“Q. What did they say? What did Rich-burg say?
“A. He said ‘Oh, we wouldn’t do anything like that.’
“Q. What did the man in the yellow T-shirt say?
“A. He didn’t say anything.
“Q. Now, when the discussion was had to go down to the grandmother’s house to take some greens down there, who asked you about that?
“A. Richburg.”
The three proceeded in the truck, with the victim driving, for several blocks to a place which one or both of the other two men indicated to the victim was near the home of the “grandmother,” where the truck was stopped and, according to the testimony of the victim, the following occurred:
*1081 “A. I went to the front of the truck, picked up a bundle of greens, and I handed it to Chaverist and asked him how did this one look, if it looked all right. And I laid it in his hands and when I did he came out from under the greens with a gun.
“Q. And this is the man with the yellow T-shirt?
“A. Yes.
“Q. All right. Now, what did he say to you then?
“A. He said, T want your money.’

“Q. Let me ask you this. When you got out of the truck, the man with the yellow T-shirt had the greens in one hand and the gun pointed at you, what happened next?
“A. He said T want your money.’ And I said ‘Oh, my goodness.’
“Q. How was he holding the gun?
“A. He had the gun pointed at me.”
In further stating and describing what occurred, the witness testified that Chaverist “shot twice into the vegetables,” turned and shot the victim in the leg and that the victim gave Chaverist some money. The victim’s testimony continued as follows:
“A. I estimate I gave him ten to fifteen dollars at that time. And he said ‘You have got more than this, I want the rest of it.’
“Q. You have got to continue to speak up, Mr. Wilson, I am having a hard time hearing you standing right over here. “Now, what did this man with the gun do or say next?
“A. He said T want the rest of it.’ And I handed him a little money. And he shot — he said — he said, T know you have got more’ and he shot into the vegetables.
“Q. Who said, T know you have got more?’
“A. Chaverist.
“Q. The man in the yellow—
“A. The man who had the gun.
“Q. Now, the money you gave him the first occasion, that ten to fifteen dollars, was that United States currency of America?
“A. Yes, it was.
“Q. Now, at that point, how many shots had been fired?
“A. Four had been shot after he — after I gave — after he had demanded more and shot again, that was four shots.
“Q. Now, where was Richburg at this point?
“A. He was still out in the street.
“Q. What happened next?
“A. Chaverist, after he had shot the fourth time, he got off of the tailgate and turned the gun towards my head and then turned it towards my chest and then turned the gun down and shot in the ground, and he was demanding more money.
“Q. Did Richburg say anything or do anything at this point?
“A. After the third and fourth shot, Richburg was hollering ‘Shoot him again, he has got more money, shoot him again.’ And when he shot the fifth shot and shot in the ground, I looked past him and — ”
In the lengthy testimony of Mr. Wilson no evidence is to be found to the effect that the defendant had a gun on the occasion or that he exercised any violence against the victim. The victim largely concluded his testimony as to what transpired among him and the other two men as follows:
“Q. Let me ask you next, please, Mr. Wilson, what did you see Richburg and the man in the yellow T-shirt do?
“A. When he shot that time he — I knew it was his sixth shot, and I just started hollering for help. And I didn’t, I thought it’s no use to go ahead for my gun. I turned — when I hollered for help, I turned and they were running down the alley.
“Q. Which alley did they run towards, please, sir?
“A. Well, it was the alley right there behind — between the two streets, two avenues there.
“Q. Let me ask you this. As they ran towards the alley and ran away from you, who was closest to you, the man in the yellow T-shirt or Richburg?
*1082 “A. Well, they were both together, just running and I don’t know which one was the closer to me.
“Q. Did you lose sight of them as they went down the alley?
“A. Yes, sir.”
The defendant did not testify, and no witness testified on his behalf, but a lengthy statement made by defendant was introduced in evidence by the State, in which statement defendant denied that he was the person with Chaverist at the time of the robbery.
In challenging the sufficiency of the evidence to support the verdict that defendant was guilty of robbery in the first degree, appellant recognizes that the appellee has made no claim that defendant was the principal in the commission of the robbery but that he was an accomplice. He strongly argues, however, that he was not an accomplice for the reason that the State “failed to show that he intended to assist or aid and abet in a robbery first degree.” He argues particularly that the evidence does not show “that Appellant knew that Chav-erist was armed with a weapon or that he intended to use it in the commission of the robbery.” We conclude that the circumstances as a whole as shown by the evidence, including the joint efforts of Chaverist and appellant to direct the victim to the place where the robbery occurred, the continued presence of appellant in the immediate vicinity of the robbery while it took place, appellant’s directions to Chaverist to shoot the victim again and not to let the victim get to his gun and the flight of appellant and Chaverist in the same direction at the same time, furnished, in our opinion, a solid foundation for the finding that appellant was guilty, as an accomplice of Chaverist, in the commission of a kind of robbery in the first degree, which is defined by Code § 13A-8-41(a)(l) as follows:
“A person commits the crime of robbery in the first degree if he violates § 13A-8-43 and he:
“Is armed with a deadly weapon or dangerous instrument; or

Appellant’s only other insistence on a reversal is that the trial court should have charged the jury on robbery in the second degree and robbery in the third degree. It suffices as an answer to his contention, that defendant did not submit any written charges whereby he requested that the court charge the jury on the subject of robbery in the second degree or robbery in the third degree. Childers v. State, Ala.Cr. App., 338 So.2d 1058 (1976); Reed v. State, 55 Ala.App. 138, 313 So.2d 564 (1975); Adams v. State, 41 Ala.App. 483, 137 So.2d 769, cert. denied, 273 Ala. 703, 137 So.2d 772 (1962). Furthermore, the single issue of fact in the case was as to the identity of the person who was with Chaverist at the time of the commission of the robbery. The settled law in Alabama as to common law robbery prior to the effective date of the present statutory law as to robbery, was that a jury should not be charged as to lesser included offenses of robbery where the only reasonable conclusion from the testimony is either that the defendant is guilty of robbery or not guilty of any crime whatever. Cordial v. State, Ala.Cr.App., 389 So.2d 170 (1980); Williams v. State, Ala.Cr. App., 377 So.2d 634 (1979), cert, denied, 377 So.2d 639; Turner v. State, Ala.Cr.App., 356 So.2d 235, cert, denied, 356 So.2d 237 (1978); Simmons v. State, Ala.Cr.App., 353 So.2d 11 (1977), cert, denied, 353 So.2d 18. It logically follows, we think, that where the evidence permits no reasonable conclusion other than that defendant is guilty of robbery in the first degree as expressly charged or not guilty of any offense whatever, charges as to robbery in the second or robbery in the third degree should not be given. The trial court was correct in limiting its oral charge accordingly.
No error appears in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the *1083 Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.