178 So. 241

**COMMANDER v. STATE.**

**4 Div. 375.**

Court of Appeals of Alabama.

Jan. 11, 1938.

Clayton, Clayton & Clayton, of Clayton, for appellant.

A. A. Carmichael, Atty. Gen., and Effie Crittenden, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

There were originally two counts in the indictment, but count 2 was withdrawn and this appellant was tried upon count 1, which charged him with the offense of grand larceny. Specifically, that he feloniously took and carried away from a warehouse one peanut dropper of the value of $20 and one cotton planter of the value of $5, all of the aggregate value of $25, the personal property of J. E. Sasser. Upon the trial the value of the above-mentioned articles, as testified to by J. E. Sasser, the alleged injured party, was $15 for peanut dropper and $4 for the cotton planter, making the total aggregate value of the two specified articles $19. Under the grand larceny statute, section 4905, Code 1923, any person who steals any personal property from a "warehouse" (and other designated buildings, etc.) of the value of $5 shall be guilty of grand larceny. It further provides that any person who steals any personal property, other than from the places designated in the statute, of the value of $25, is guilty of grand larceny. Section 4908 provides that any person who steals personal property under any other circumstances than are speci-fied in section 4905, if the value of the property is less than $25, is guilty of petit larceny.

In this case the first question to consider is: Is there a variance between the allegation in the indictment wherein it is charged that the property involved in the instant case was stolen "from a *warehouse*," and in the proof as to the description of the house in question as shown by the testimony of the alleged injured party, wherein he testified, "I had those articles (referring to the alleged stolen property) down there in a little outhouse. There was just a chain pulled through the door, if it was fastened at that time"? This witness further testified that the house in question was about three-quarters of a mile back from the road. On cross-examination, Sasser further described the house by stating: "I put those planters in that *tool house*, it was a little *dwelling house*, until we taken it for a *hay house*; it was sorter of a *plunder house*, the chimney fell down and we just put hay in there. That house was not nailed or locked up, not the back door where the stuff was in a little old back room. I am not sure it was fastened." The foregoing is all the testimony tending to describe the house from which the articles were alleged to have been stolen. The question therefore is: Was the house, as described, "*a warehouse*" such as the law contemplates? If it was not, the larceny from said house of the designated articles was petit larceny, and not grand larceny, as all the evidence adduced upon the trial shows without dispute that the value of the alleged stolen property was less than $25.

A person under indictment for grand larceny, under section 4905 of the Code 1923, may be convicted of petit larceny.

We have carefully read and considered the instructions of the court to the jury in the oral charge. In said charge, while well expressed, the court dealt principally in generalities, but failed to define to the jury the elements of the offense necessary to establish the corpus delicti. Whether the doing of an act, or series of acts, constitutes grand larceny, or petit larceny, is a question of law; whether such act or acts were committed by the accused is a question of fact. This distinction runs through all the elements of the offense, the court defining the corpus delicti, the jury deter-

mining whether the evidence established it or not, that is whether the property described in the indictment was of the value stated, and was or was not taken and carried away at the time, and *from the place*, and in the manner alleged. In this case, the jury was left without instruction as to which kind or character of building, in contemplation of law, constitutes *a warehouse*, and were likewise without instruction as to the purport and importance of the testimony as to the value of the property in question. We are clear to the opinion that the evidence adduced failed to establish the building in question as a warehouse, as the statute contemplates, and this appearing as a matter of law, the jury should have been instructed accordingly. As stated, the evidence without dispute tended to show the value of the property as being less than $25 and the described building, under the evidence, not coming within the classification of the statute, if a crime was committed, under this status it would necessarily under the law be petit larceny, and not grand larceny. The court refused to defendant the general affirmative charge requested as to grand larceny.

■ As we construe the testimony in this case, the conviction of this appellant rested solely upon the testimony of state witness Grover Sasser. No other witness testified to any fact tending to connect appellant with the larceny of the two planters alleged to have been stolen. There was evidence tending to show that this witness Grover Sasser committed the act complained of, and it was for the jury to decide whether or not Grover Sasser was an accomplice in the commission of the larceny charged. Grover Sasser, said witness, testified that Mr. J. E. Sasser, the alleged injured party, is his uncle. He further testified: "I know that little storehouse where Mr. J. E. Sasser kept his plow tools and things. It had been a dwelling house. We went on down there and left the truck fifty yards on this side of the house and went on to the house. Dan suggesed that we stop there. Ted was present. He just said stop the truck there and they wouldn't see no lights or hear it. * * * We went on up there and stopped the truck and went on down there and Dan got in there and set the cotton planter out, and the Cole dropper, and pulled the door back like it was. Dan did that. Ted was standing in the yard. Neither Ted nor I went in the house. When he brought them out Dan carried the Cole

dropper and Ted carried the cotton planter. We got back to the truck and put them in the back there and went to Ariton. Me and Dan and Ted." He gave other evidence of like import, and the testimony of several witnesses tended to show that he, Grover Sasser, was seen with one Houston late at night with the alleged stolen property on a truck. The person who purchased the property, one Ellis Armstrong, testified: "I bought a peanut dropper and a cotton planter from Dan Houston. I couldn't tell for certain who was with him. Ted Commander (appellant) was not present. Somebody was with him driving the car. * * * It was somebody about the size of Grover Sasser. Ted Commander didn't have a car at that time. * * * I wouldn't swear to the identity of the man with Dan. He was about the size of Grover Sasser. Ted Commander was not in it in any way. I did not know Ted Commander in that trade at all."

Witness Floyd Paulk testified: "I know Grover Sasser. I don't know anything about a Cole dropper and cotton planter that Dan Houston and Ted Commander are charged with having stolen from J. E. Sasser. I don't know anything about Grover Sasser's hauling it to Louisville. He (Grover Sasser) tried to get me to carry it there for him."

Dan Houston, who was jointly indicted with appellant, testified, among other things: "Grover Sasser owed me $5.00 I had loaned him. I was broke and needed my money and he says, 'I got a cotton planter and a Cole dropper at home. If I can sell it I'll pay you what I owe you. If you find anybody to buy it, I'll pay you your $5.' He asked me did I know of anybody to buy it and I told him I didn't know anybody at that time, so I saw Mr. Ellis Armstrong up in town about Christmas, and I asked him. Well, Grover come to see me and got me to go with him up there on T. A. Barr's car and he had the planter and dropper on T. A. Barr's car. We carried it to Mr. Ellis Armstrong's house and I helped him carry it to the barn—the planter and the dropper, and he gave me $15 and I gave it to Grover and he gave me $5 back. Grover said those things were his. * * No, sir, Ted Commander and Grover Sasser and I did not go over there and steal those things out of any old house on J. E. Sasser's place. I know where Oscar Sasser lives. We got those planters from Grover Sasser's house in the barn going towards

the highway just this side of his house. If Ted Commander had anything to do with those planters over there I didn't know anything about it. He was not on the truck with us. He was not with us when we got those planters. * * * Ted Commander did not have anything to do with, or any part in, putting those planters on the truck, nor did he have any part in any trade or sale of those planters. If he knew anything about it before they arrested us, I don't know it. I had not heard him say anything about it, and he didn't even see them that night. I don't know that he has ever seen them. * * * I got with Grover Sasser at Mr. Barr's place. Ted was up there. We carried him to his house. That's the first place we went from there. We carried him home and he got off at his house. We did not see Ted any more that night. I don't know exactly what time it was when we got up to Grover's house. When we went to his house we got the planter and the dropper and started back. I helped him put it in the truck."

As hereinabove stated, there is no evidence in this case to corroborate the testimony of Grover Sasser, the admitted accomplice, as to Ted Commander's having any connection with or participation in the crime charged against him and for which he was convicted. This being true, under the provisions of section 5635 of the Code of 1923, the conviction of this appellant of a felony cannot be permitted to stand, and the trial court should have so held.

The fact that the defendant, Ted Commander, was seen with Grover Sasser and Dan Houston, at Barr's Filling Station, in the afternoon of the night of the commission of the alleged crime, which from the testimony was committed several hours thereafter, is no corroboration of the accomplice's testimony as was expressly decided by the court in the case of Kemp v. State, 24 Ala.App. 591, 139 So. 437. In said case this court stated: "Evidence that accused was seen driving about streets with accomplice, and finally in direction of accused's home, on night of burglary, held insufficient corroboration of accomplice to sustain conviction of grand larceny (Code 1923, § 5635)."

We refrain from discussing in detail the insistences of appellant based upon alleged highly improper conduct of the solicitor in cross-examination of the defendant and of defendant's witnesses. Also upon alleged improper statements and conduct during the argument by the solicitor and his assistant to the jury. The following authorities appear to sustain appellant as to these matters: Bozeman v. State, 25 Ala.App. 281, 145 So. 165; McMickens v. State, 16 Ala.App. 78, 75 So. 626; Newell v. State, 16 Ala.App. 77, 75 So. 625; Dennison v. State, 17 Ala.App. 674, 677, 88 So. 211.

Reversed and remanded.