The appellant was charged and convicted of burglary in the second degree and grand larceny. The trial Judge fixed his punishment at ten years in the penitentiary. After conviction, the appellant was furnished a free transcript and trial counsel was appointed to represent him on appeal.
The facts are not in dispute. The appellant did not testify nor offer any evidence in his defense.
After the State had completed its case, the defense made a motion to exclude the State's evidence on the ground that the only evidence tending to connect the appellant with the charged crimes was the testimony of accomplices. Defense counsel also requested the affirmative charge and made a motion for a new trial raising the sufficiency of the evidence to sustain the judgment of conviction. We will therefore recite the evidence in the light most favorable to the State.
Larry Presley is the owner of Clemmons Drug Store. In the early morning hours of Tuesday, May 11, 1976, he was notified that there had been a break-in of the building adjoining his store. Presley went to his store and found that a drawer near his cash register was missing. He checked the narcotic drawer in the pharmacy department of the store and found that it was locked but was empty. The key, which was kept in another location in the store, had been used to open the drawer. Presley made a list of the missing narcotic pills and tablets, which he testified were valued at $135.00. The night latch on a door leading to a *Page 544 
storage room was torn off. This storage room opened into the adjoining building, which was occupied by an optometrist.
Jerry Brannon was the Chief of Police of Opp, Alabama. He investigated the burglary on Tuesday morning. He went to Monroeville and questioned four or five subjects. He also brought some subjects back to Opp, but could not remember the names of any of them.
Covington County Deputy Sheriff Howard Easley also went to Monroeville in connection with the burglary and larceny of Clemmons Drug Store. He talked with several people, including some Monroe County Sheriff's deputies about this matter. He took three pictures of a blue Chevrolet with a Florida license tag registered to the appellant. He obtained some labels from drugs which the Monroe County Sheriff's Department had found. Deputy Easley returned the appellant from the Monroe County jail where he was booked under the name of Mike Phillips.
Lenwood Sager, Sheriff of Monroe County, testified that he received information relative to an alleged burglary of a drug store and doctor's office in Opp. He was informed a blue car was involved. Some deputies from Covington County gave him several boys' descriptions, the source of which was never identified. As a result of this information, Sheriff Sager staked out an old abandoned house. Hiding in a room of that house, the Sheriff saw Kevin Morrison enter the house and pick up a "gang of pills" from under some hay. Morrison was arrested and given his constitutional rights. Several days later, Morrison took the Sheriff to a wooded area about three or four miles from his house trailer and showed him "a bunch of labels and bottles (that) had been busted and burnt, that was buried in stump holes in the woods". Morrison identified these labels and bottles as coming from the drug store in Opp. The Sheriff gave these labels to "the tall Deputy" from Covington County. Deputy Easley subsequently identified the labels as being the ones he had received from Sheriff Sager. These labels were also identified as naming the same type of drugs and narcotics that Mr. Presley inventoried as missing from his store following the burglary. Mr. Presley could not state that the labels positively came from his drug store.
Estel Hubert Stokes, Jr. (Chippy) was indicted and pleaded guilty to the burglary and larceny of Clemmons Drug Store. He testified that on the afternoon of Monday, May 10, 1976, he went to Kevin Morrison's trailer in Monroeville. The appellant and a boy named Brian Baustert (Zombie) were there. The appellant's nickname was Whimpy. About three or four that afternoon, they all went to get some beer. Stokes was driving. After they got the beer they went riding and ended up in Opp, just after the sun went down. While riding, all four passengers in the car drank the beer and smoked marijuana. Somewhere along the way, the appellant and Morrison started a conversation about "hitting a drug store". Everyone got into the conversation. On arriving in Opp, they drove up to a drug store which Morrison pointed out, then went and parked in front of the recreation center (Rec Center) across the street from the drug store. They played some pool and foosball at the Rec Center for "a pretty good while". During the time they were there, Stokes testified that he and the appellant went to check out the drug store and see if there was a way to get in. Stokes stood lookout while the appellant checked the back door. After that, they went back to the Rec Center and played some more pool and foosball. Then they left in the appellant's car and drove down a little road in back of the parking lot behind the drug store. Stokes, Morrison, and the appellant went to the back of the drug store and the appellant and Morrison, using the crowbar which the appellant had brought with him, pryed open the back door enough so that the appellant could scoot through, take the bar off the inside of the door, and let the others in. While Morrison served as a lookout, Stokes and the appellant went inside and through another door which the appellant opened with a nail. This door led into the drug store where they found the key to the narcotics drawer and *Page 545 
got the drugs and placed them in a box. While in the store, the appellant gave Stokes some money.
Stokes and the appellant took the box on leaving the store and all four of them drove back to Monroeville, where they all went to Morrison's trailer. Stokes took some of the drugs and left.
Brian Baustert (Zombie) was also charged and had pleaded guilty to the burglary and grand larceny of Clemmons Drug Store. In May of 1976, he ran into Morrison in a pool hall in Monroeville. Together they went to Morrison's house trailer finding Morrison's wife, Danny Briggs and his brother, and the appellant present when they arrived. Baustert, Stokes, Morrison, and the appellant left the trailer in the appellant's automobile, a blue Chevrolet with a Florida license tag. Before leaving, Stokes and the appellant mentioned something about going and trying to break into a drug store. They stopped and got some beer and continued riding, ending up in Opp about dark. In Opp, they went to the Rec Center across the street from Clemmons Drug Store and parked the car in front of the center. They stayed about one hour and one half during which time Stokes and the appellant left for about twenty minutes. When Stokes and the appellant returned, they stayed about ten to twenty minutes and then all four people left. They rode behind the drug store parking lot and parked on a back street. Stokes and the appellant then walked across the parking lot toward the drug store, which could not be seen from the car. About fifteen minutes later, the two returned and said they could not get in; Morrison went to help them. Twenty or thirty minutes later, Stokes and the appellant returned to the car, Morrison having returned earlier. All four then drove over to the parking lot, picked up a box and put it in the back seat of the appellant's car. After going down some back roads, they stopped and placed the box in the trunk of the car. They returned to Monroeville where they went to Morrison's trailer and divided up the pills taken from the drug store.
Baustert testified that he never went inside the drug store and could not see the store from the car. He denied being a lookout for the others, asserting that he "was just with them when it happened". He admitted that he went with the others although they said they were going to Opp to try to break in a drug store.
Witness Johnny Mack testified that he ran Johnny's Arcade, the Rec Center, in Opp, Alabama. He recalled that on the night the drug store was broken in, four strangers came into the Rec Center about 8:00 or 8:30 p.m., arriving in a dark blue Chevrolet with a Florida license tag. He identified a picture of the appellant's car as being that same automobile. They played pool and foosball for about one hour and a half. During this time two of the four left, but returned about twenty minutes later. All four left about 10:00 p.m. While they were there, he noticed that one of the four had a package of cigarettes bearing a Monroe County tax stamp. He identified the appellant as being one of the four strangers and testified that he heard them call each other Zombie, Chip, and Whimpy.
The State rested; defense counsel moved to exclude and motion being denied, rested its case.
In charging the jury, the trial Court included the following instructions:
 "Now, in this case there was testimony of two accomplices and that was for your consideration. You will determine what weight you will give to the testimony of those accomplices just as you will what weight you will give to the testimony of all other persons. But before you can return a verdict of guilty against this Defendant based upon the testimony of those accomplices, it must be corroborated. And our courts have said that the corroboration must be by a material fact which shows the Defendant's participation in the commission of the crime. And the mere fact that a crime has been committed in and of itself is not sufficient to corroborate the testimony of an accomplice. So you will determine if there is any material fact in this case which corroborates *Page 546 
the testimony of the accomplices and what weight you will give the testimony of the accomplices."
The appellant urges that, in the absence of any substantial evidence corroborating the testimony of the two accomplices, the trial court was in error in not excluding the State's evidence on the motion of the defendant, in failing to give the affirmative charge to the jury as requested, and in failing to grant the appellant a new trial. The question of whether the evidence sufficiently corroborated the accomplice has properly been presented to this court for review. Alexander v. State,44 Ala. App. 143, 204 So.2d 486, cert. denied, 281 Ala. 451,204 So.2d 488 (1967); Leonard v. State, 43 Ala. App. 454,192 So.2d 461 (1966). We are therefore compelled to reverse the appellant's conviction, there being no evidence to corroborate the testimony of the two accomplices. We note that the State, both in its brief on appeal and in oral argument before this court, has failed to point out one single circumstance which serves to sufficiently corroborate its case. In Alabama, an accused may not be convicted on the uncorroborated testimony of his accomplice. Code of Alabama, 1940, Title 15, § 307.
As the learned Mr. Justice Robert Tennent Simpson said inSorrell v. State, 249 Ala. 292, 31 So.2d 82 (1947),
 "The principle controlling is well understood and of almost universal application."
 "The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. It is not sufficient if it is equivocal or uncertain in character and must be such that legitimately tends to connect the defendant with the crime. It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt."
See also Evans v. State, 42 Ala. App. 587, 172 So.2d 796 (1965);Money v. State, 43 Ala. App. 273, 188 So.2d 772, rehearing denied, 43 Ala. App. 378, 190 So.2d 922, cert. denied, 280 Ala. 716, 190 So.2d 924, cert. denied, 386 U.S. 985, 87 S.Ct. 1292,18 L.Ed.2d 234 (1966); House v. State, Ala.Cr.App.,342 So.2d 461 (1977); 6 Alabama Digest, Criminal Law, 510 et seq.
The process of analyzing the evidence to determine if there has been sufficient corroboration of an accomplice (or accomplices) is one of subtraction. That is, the trial court, on proper motion, as a matter of law is required to take away the evidence of the accomplice(s) and determine whether the rest of the testimony is sufficient to tend to connect the defendant with the commission of the offense. Dobbins v. State,45 Ala. App. 190, 227 So.2d 820 (1969); Miller v. State,290 Ala. 248, 275 So.2d 675 (1973). By filing an oral motion to exclude the State's evidence, a written request for the affirmative charge, and by a timely filed and presented motion for a new trial asserting lack of corroboration as a ground of the motion, the appellant properly placed the burden on the trial court to apply this test. Alexander, supra; Leonard, supra.
The two accomplices testifying in this case were Stokes and Baustert. Both had previously entered a guilty plea to the same crimes for which the appellant was convicted. Therefore, both were accomplices in contemplation of law, and the charge against appellant being a felony, no conviction of the appellant could be had upon the testimony of these witnesses, unless their testimony was corroborated by independent evidence tending to connect the defendant with the commission of the offense. Davis v. State, 283 Ala. 686, 220 So.2d 860 (1969).
In applying the test of Sorrell, we must first eliminate the testimony of the two accomplices and then examine the remaining evidence. By doing so, we find that the only evidence presented which may be argued as corroborating that of Stokes and Baustert was the testimony of the witness Mack, the manager of the Rec Center. Mack's testimony as pertinent to corroboration was that he saw the appellant with Stokes and Baustert on the night of the burglary at his Rec Center, which was located *Page 547 
across the street from the drug store. Mack further stated that all four individuals drove up in a blue Chevrolet with a Florida license tag. Such an automobile was registered to the appellant. Mack testified that the appellant and his friends arrived about 8:00 or 8:30 p.m. and left about 10:30 p.m. He did not observe them do anything out of the ordinary. Thus all we have to corroborate the testimony of the accomplices is the fact that the appellant was seen with the admitted criminals at a public place shortly before the commission of the crime. Here, evidence independent of the accomplices, reveals that the crime was committed sometime after the drug store was closed (although we do not know what time that was) and before 12:30 a.m. when the store owner was contacted by the police. We may also include in these corroborating circumstances the fact that the accomplices arrived in the appellant's automobile and the fact that Opp is in a different county than Monroeville.
Being in the company of an accomplice in proximity in time and place to the commission of the crime is not always sufficient corroboration to meet the requirements of our statute. Section 307, Title 15, Code of Alabama; Commander v.State, 28 Ala. App. 42, 178 So. 241; Kemp v. State, 24 Ala. App. 591,139 So. 437. The rule is often stated that when an accomplice and an accused are seen together in rather unusual places and times in proximity to the locus of the crime, which occurs at an unreasonable hour, the requirements of corroboration are met. Robinson v. State, 40 Ala. App. 74,108 So.2d 376, cert. denied, 268 Ala. 698, 108 So.2d 377 (1959). A more proper and correct statement of the rule is that the fact that at or about the time of the commission of the offense with which the accused is charged, he and the accomplice were together, in or near the place where the crime was committed,may, in conjunction with other facts and circumstances, sufficiently tend to connect the accused with the commission of the crime to furnish the necessary corroboration of the accomplice. Kemp, supra; Commander v. State, 28 Ala. App. 42,178 So. 241 (1938); DeGraaf v. State, 34 Ala. App. 137,37 So.2d 130 (1948); Segars v. State, 19 Ala. App. 407, 97 So. 747
(1923). This conclusion is substantiated by a reading of those cases announcing the general rule. Additional facts and circumstances, however slight, must be adduced to support the testimony of the accomplice in addition to or in conjunction with those of proximity, chronologically and graphically, to the alleged offense in the association of an accomplice. In conjunction with the facts of proximity and association, those additional facts and circumstances may consist of flight of the accused (Ross v. State, 74 Ala. 532); escape of the accused(Pryor v. State, 47 Ala. App. 706, 260 So.2d 614 (1972)); suspicious conduct of the accused (Luther v. State, 47 Ala. App. 647, 259 So.2d 857, cert. denied, 288 Ala. 745, 259 So.2d 862, cert. denied, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131); testimony of nonaccomplice witness that she saw the defendant enter back door of another's house after trying front door and come out front with a saddle (Blevins v. State, 56 Ala. App. 115, 319 So.2d 734, cert. denied, 294 Ala. 753, 319 So.2d 739); defendant seen in company of others when one of those present in room with defendant had hand in pocket of robbery victim who was unconscious (Miller v. State, 290 Ala. 248, 275 So.2d 675); association with accomplice before and immediately after crime in unusual place (Cheatwood v. State, 22 Ala. App. 165,113 So. 482, cert. denied, 216 Ala. 692, 113 So. 915; Tidwell v. State,37 Ala. App. 228, 66 So.2d 845, cert. denied, 259 Ala. 464,66 So.2d 848 (1953)); and the testimony of the accused which tends to corroborate that of the accomplice (Rogers v. State,38 Ala. App. 126, 78 So.2d 668; Robinson v. State, 40 Ala. App. 74,108 So.2d 376, cert. denied, 268 Ala. 698, 108 So.2d 377
(1959)). Here there was simply no evidence which would implicate and tend to connect the appellant with the charged crime. While some argument could be made that the appellant was seen at an unusual hour, this contention is weak and unacceptable in view of the surrounding circumstances and conditions. *Page 548 
The facts of this case create a strong suspicion that the appellant did, in fact, participate in the burglary of the drug store. However, speculation and suspicion will not support a conviction. This court can do no more than apply the laws of this State to the facts in hand. Under such laws, we find that the appellant was convicted upon the uncorroborated testimony of his accomplices. For this reason, this case is hereby
REVERSED AND REMANDED.
All Judges concur.