346 So.2d 11 (1977)
Richard Bernard LINDHORST
v.
STATE.
8 Div. 881.
Court of Criminal Appeals of Alabama.
March 8, 1977.
Rehearing Denied March 29, 1977.
J. Zach Higgs, Jr., Hornsby, Blankenship, Higgs, Smith & Robinson, P.A., Huntsville, for appellant.
William J. Baxley, Atty. Gen., and Elizabeth N. Petree, Asst. Atty. Gen., for the State.
*12 PER CURIAM.
On the morning of October 28, 1974, the bodies of Clyde Johnson and his wife Lucy were found in a field approximately eight miles from Huntsville, Alabama. Clyde Johnson's death was caused by a gunshot wound to the head, for which appellant was indicted for first degree murder on November 14, 1975. He was convicted and sentenced to life imprisonment on June 16, 1976.
William Grubbs testified that Lucy Johnson was his mother and Clyde Johnson was his step-father. On October 27, 1974, he went to the Johnson home at 7:30 P.M. and left with his younger brother at 7:45 P.M. The victim was in the back yard at that time working on a shed or a barn with a neighbor. Grubbs returned to the Johnson residence around 10:45 P.M. and discovered the house had been ransacked and that the Johnsons were missing and their Cadillac was gone. He noticed some guns which the Johnsons kept in the house were missing and after checking with his sister and with a neighbor concerning his parents, he called the police. The next morning, he was informed by the police of the death of his mother and step-father.
Grubbs testified that about a year earlier, his step-father had introduced him to the appellant. He said the appellant was in Huntsville, driving a Cadillac in which the Johnsons were passengers. Grubbs said that the appellant and Clyde Johnson went to Atlanta on that occasion, and Johnson returned later without the appellant.
Thomas and James DeSherlia were admitted accomplices in the murders. The State granted James complete immunity from prosecution for the murders if he testified against the appellant. Thomas DeSherlia was called as a witness, but refused to testify regardless of his grant of immunity. However, his brother James did testify.
James DeSherlia testified that appellant was married to his sister, Fonda DeSherlia. He said appellant talked to him and his brother Thomas in Iowa in October 1974, and they discussed coming to Huntsville and getting some of the appellant's personal belongings from the Johnsons and robbing them.
DeSherlia testified that he vaguely remembered that appellant had told him previously that the Johnsons had set him up on a criminal charge in Atlanta and that Clyde had kept over $500.00 in bond money and left him in jail. The witness said they came to Huntsville to rob the Johnsons, and no mention was made of killing them until the appellant shot Clyde Johnson.
James DeSherlia testified that the trio checked into a motel; went to the Johnson home and waited until after the two boys left the house; they were driving a dark green Mustang with Iowa license tags which they parked around the corner of the house; they entered the house armed with guns and seized the Johnsons; the Johnsons were tied up and their mouths taped; the trio put the victims in the Johnson's Cadillac and with Thomas DeSherlia driving, they went to a field out in the county.
James DeSherlia further testified that the appellant had them stop, and they all got out of the car; that he helped Lucy Johnson up an embankment and saw that appellant already had Clyde Johnson in the field; that appellant then shot Clyde Johnson in the head and told Thomas DeSherlia to kill Lucy Johnson; that Thomas shot Lucy with appellant's gun; that the witness was told to shoot them also, and he did. The trio then left the scene in the Cadillac, parked it near the Johnson home, and left in the Mustang. The witness said that he went to Arizona when he left Huntsville. On cross-examination, James DeSherlia admitted having previously been convicted and serving time in the penitentiary for burglary and for auto theft.
William Courtney testified that he lived about one hundred yards from the Johnson home. Around 8:00 P.M. on October 27, 1974, he entered his driveway and noticed a strange car parked in front of his house. It was a dark colored Mustang with Iowa license plates. Around 10:30 P.M., he noticed the car was gone.
*13 Wayne McCarty testified that during October 1974, he was desk clerk at the Johnson Economy Inn Motel in Huntsville. He identified a registration card for rooms 310 and 326 dated October 27, 1974, and bearing the signature "Paul Nations" as registrant. The card indicated the residence of the registrant was Memphis, Tennessee, and that he was driving a 1967 Ford with a Tennessee license. No color or other description of the car was shown.
The witness also identified the motel's folio card for the rooms in question. The customer's copy of the card was still attached, which would "go to the guest upon his check out if he so chose to stop by the desk and pick it up." The motel, however, had a policy that registering guests must pay in advance by cash or credit card.
Mr. McCarty remembered seeing the DeSherlia brothers at the motel on the date in question and ascertaining from them that they were staying in either Room 310 or 326. However, he could not identify the appellant, and he did not know if appellant was at the motel or filled out the registration card.
An F.B.I. agent testified that the handwriting on the motel registration card (purportedly signed by Paul Nations) contained significant similarities to the appellant's handwriting. That indicated to him that the handwriting on the card was probably that of the appellant. However, he testified that in order to be positive, he would need to examine additional samples of appellant's handwriting.
Another F.B.I. agent testified that the fingerprints found on the motel registration card matched appellant's fingerprints. Therefore, the appellant at some time had handled the card.
After the trial court overruled appellant's motion to exclude the State's evidence, the defense put on one witness and then rested. Craig McLaren was serving time in the Madison County Jail on a first degree murder conviction. He testified that he was confined for several weeks in the same cell with the DeSherlia brothers. McLaren testified that during their joint confinement, he heard Thomas and James DeSherlia tell about how they killed the Johnsons, but they never mentioned the appellant as being involved.
The sole issue presented on appeal is whether the State presented enough independent evidence to corroborate the testimony of the accomplice, James DeSherlia.

I
Title 15, § 307, Code of Alabama 1940, provides:
"A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
The test to determine whether § 307, supra, has been complied with is set forth, in a landmark decision on this point of law, in Sorrell v. State, 249 Ala. 292, 31 So.2d 82 (1947):
". . . ` * * * the proper test in determining whether there was sufficient corroboration of the testimony of an accomplice, according to statutory requirements, is first to eliminate the evidence of the accomplice and then, if upon examination of all the other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration.' . . ."
The above test has been explained in McElroy, Law of Evidence in Alabama, (1962), Vol. 3, § 300.01(5) as follows:
"Non-accomplice evidence of the defendant's guilt, to be sufficient corroboration of the accomplice's testimony to take the case to the jury, must tend to connect the defendant with the crime, i. e., point to the defendant himself as distinguished from other persons as the perpetrator of the crime; hence, non-accomplice evidence confirmatory of the way and manner in which the crime was committed *14 but which is colorless and neutral insofar as the defendant's connection with the crime is concerned, is not sufficient corroboration to warrant submission of the case to the jury:

"Marler v. State, 68 Ala. 580 (quoting Lord Abinger in Reg v. Farler, 8 C & P 106, `A man who has been guilty of a crime himself will always be able to relate the facts of the case, and if the confirmation be only of the truth of that history, without identifying the persons, that is really no corroboration at all'); Tompkins v. State, 7 Ala.App. 140, 61 So. 479; Alexander v. State, 20 Ala.App. 432, 102 So. 597; Lotz v. State, 23 Ala.App. 496, 129 So. 305."

II
It is necessary to review the non-accomplice evidence of the State to determine if it tends to connect the appellant with the commission of the crime. If such evidence merely shows the commission of the crime or circumstances of the offense, it is insufficient. Motes v. State, 20 Ala.App. 195, 101 So.2d 286 (1924). This is because the accomplice knows the details of the crime when he testifies, and the law requires independent evidence (not merely repetitions of the circumstances of the crime) connecting the appellant with its commission.
We have often quoted from Sorrell v. State, supra, the following:
" . . . The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. It is not sufficient if it is equivocal or uncertain in character and must be such that legitimately tends to connect the defendant with the crime. It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt. . . ." (Citations omitted.)

A.
The State contends that the motel registration card corroborates the testimony of the accomplice that the trio were in a dark green Mustang and that such is further corroborated by the Johnsons' neighbor who saw a dark colored Mustang with Iowa license tags parked some one hundred yards from the Johnsons' home at the time of the crime.
The neighbor's testimony does not connect the appellant with the scene of the robbery and kidnapping. He did not see the appellant. He only saw a dark colored Mustang with Iowa license plates.
The motel registration card indicated that "Paul Nations" was driving a 1967 Ford with a Tennessee registration. The State's contention is that the two cars are one and the same. The motel card does not state that the Ford was a Mustang, nor that it was dark green, or even dark colored. The neighbor did not say what year model the Mustang was, and neither did the accomplice. The motel card indicates a Tennessee license whereas the neighbor saw an Iowa license. The only similarity we find is that both cars were manufactured by the Ford Motor Company; a circumstance that fits several million vehicles in this country. This certainly does not tend to connect the appellant with the murder of Clyde Johnson.
The State contends appellant had a grudge against the victim, which was corroborated by Grubbs' testimony that the appellant and the victim went to Atlanta together a year earlier and that appellant did not return to Huntsville with the victim. Such a conclusion is not supported by the evidence. The only testimony in the presence of the jury concerning a grudge came from the accomplice. The fact that appellant and the victim went to Atlanta together and the victim returned alone is neither consistent nor inconsistent with either the guilt or the innocence of the appellant.
Grubbs testified, outside the presence of the jury, that his deceased step-father told him that he and the appellant had gotten into some trouble in Atlanta and that appellant was in jail there, but that Clyde Johnson got away and was trying to raise some bail money for the appellant. Upon objection *15 by defense counsel, the trial court instructed the witness not to pursue the subject. Thus no evidence of motive was presented to the jury by a non-accomplice.
The State next contends that the fact that guns were taken from the Johnson home corroborates the accomplice's story that appellant wanted to rob the Johnsons for some of his belongings, including "some weapons." Such corroborates only what the accomplice said was the appellant's motive for coming to Huntsville. The accomplice knew everything taken from the Johnson house, he knew all the details of the crime, and he could have attributed any number of the details to appellant. There was independent evidence of the place of the kidnapping, the kind of car taken from the residence and used, the place where the victims were taken, the fact that the Johnsons were shot, and many other details. The independent proof of these facts all support the conclusion that the accomplice was there and took part in the crime, but they do not, independently of the accomplice's testimony, connect the appellant with the crime.
By excluding the accomplice's testimony as per the test in Sorrell, supra, the missing guns do not connect the appellant with the crime, because it was the accomplice who said the appellant wanted to get weapons from the Johnsons.
Finding a still where an accomplice said a defendant was making whiskey was held to be insufficient corroboration to connect the defendant with the offense in Alexander v. State, 20 Ala.App. 432, 102 So. 597 (1925). Likewise, finding stolen articles where the accomplice said a defendant hid them was held insufficient corroboration to connect the defendant to the crime in Lotz v. State, 23 Ala.App. 496, 129 So. 305 (1930).
The same is true of the State's contention that independent evidence establishes the time frame of the crime and thus corroborates the accomplice's story. It corroborates details of the accomplice's story on points which do not connect the appellant with the crime. Again, excluding the accomplice's testimony, the fact that the crime took place certain times does not connect the appellant with the crime.
The State contends in brief that the accomplice testified that after the murder the trio left the state immediately, that such is evidence of flight, corroborated by the fact that the appellant did not check out of the motel. After DeSherlia testified concerning the murder and the type car he was in, the prosecutor asked the following question and received the following answer:
"Q. Where did you go after you left Huntsville?
"A. Through Alabama, Mississippi, Louisiana, Texas, MexicoNew Mexico, and Arizona."
DeSherlia did not testify that he left Huntsville "immediately." In fact, he did not state when he left Huntsville or whether appellant left with him. He only said where he went after leaving Huntsville.
The folio or receipt in question shows the room charges were paid. The fact that a motel guest departs without picking up a copy of the folio or receipt does not evidence flight. This is especially so where the guest pays for the room in advance on checking into the motel. As to why a copy of the receipt was not picked up, we do not know from the evidence. By speculation, the State contends an inference of flight may be drawn. Also by speculation, one may assume the occupants were either forgetful or negligent. This is not a fact which tends to connect the appellant with the crime. He could very well have left town with the accomplices without ever knowing a murder had been committed. He could have been in the motel room asleep during the crime, or in a restaurant, or in a movie. This is why it is incumbent upon the State to present evidence independent of the accomplices' which connects the defendant to the commission of the crime. Else, any guilty party is apt to implicate an innocent party in exchange for a grant of immunity from prosecution.

B.
We summarize below the non-accomplice evidence concerning the appellant:
*16 1. Appellant knew the victim. He was in Huntsville a year earlier with the victim, and they went to Atlanta together.
2. A Huntsville police investigator testified that appellant was married to the sister of the DeSerlia brothers.
3. Appellant handled a motel registration card, and "probably" signed it, using an assumed name, on the date of the murder, October 27, 1974.
4. The two accomplices, James and Thomas DeSherlia, were at the same motel on that date in one of the rooms registered in the assumed name.
The strongest circumstance against the appellant in this case is the fact that the appellant was registered under an assumed name in a motel with the two accomplices on the date of the murder. That was suspicious conduct on his part without question.
Suspicious conduct alone is insufficient corroboration. There must be something more. Suspicious conduct coupled with close proximity to the crime and opportunity to commit it has been held to be sufficient. Cheatwood v. State, 22 Ala.App. 165, 113 So. 482 (1927).
In Kimmons v. State (1977) Ala.Cr.App., 343 So.2d 542, we stated in pertinent part:
"Being in the company of an accomplice in proximity in time and place to the commission of the crime is not always sufficient corroboration to meet the requirements of our statute. Section 307, Title 15, Code of Alabama; Commander v. State, 28 Ala.App. 42, 178 So. 241; Kemp v. State, 24 Ala.App. 591, 139 So. 437. The rule is often stated that when an accomplice and an accused are seen together in rather unusual places and times in proximity to the locus of the crime, which occurs at an unreasonable hour, the requirements of corroboration are met. Robinson v. State, 40 Ala.App. 74, 108 So.2d 376, cert. denied 268 Ala. 698, 108 So.2d 377 (1959). A more proper and correct statement of the rule is that the fact that at or about the time of the commission of the offense with which the accused is charged, he and the accomplice were together, in or near the place where the crime was committed, may in conjunction with other facts and circumstances, sufficiently tend to connect the accused with the commission of the crime to furnish the necessary corroboration of the accomplice. Kemp, supra; Commander v. State, 28 Ala.App. 42, 178 So. 241 (1938); DeGraff v. State, 34 Ala.App. 137, 37 So.2d 130 (1948); Segars v. State, 19 Ala.App. 407, 97 So. 747 (1923). This conclusion is substantiated by a reading of those cases announcing the general rule. Additional facts and circumstances, however slight, must be adduced to support the testimony of the accomplice in addition to or in conjunction with those of proximity, chronologically and graphically, to the alleged offense in the association of an accomplice. In conjunction with the facts of proximity and association, those additional facts and circumstances may consist of flight of the accused (Ross v. State, 74 Ala. 532); escape of the accused (Pryor v. State, 47 Ala.App. 706, 260 So.2d 614 (1972); suspicious conduct of the accused (Luther v. State, 47 Ala.App. 647, 259 So.2d 857, cert. denied, 288 Ala. 745, 259 So.2d 862, cert. denied, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131) . . . ."
In Kimmons, the defendant was seen immediately prior to and after the burglary in the presence of two admitted accomplices at a recreation center across the street from the drug store which was burglarized. That was held to be insufficient corroboration.
Evidence that a defendant was with the accomplice at a service station near the scene of the burglary late on the night before the burglary was insufficient to corroborate the accomplice's testimony in Anderson v. State, 44 Ala.App. 388, 210 So.2d 436 (1968).
Evidence that a defendant was at the same motel at which an accomplice was staying and was also in the company of a second accomplice, was insufficient to corroborate the accomplice's testimony. Dobbins *17 v. State, 45 Ala.App. 190, 227 So.2d 820 (1969).
In the instant case, excluding the accomplice's testimony, we find:
1. No evidence of motive.
2. No evidence that appellant was in possession of any fruits of the crime.
3. No physical evidence at the scene of the crime to connect the appellant, such as fingerprints on the Cadillac or in the house.
4. No murder weapon was in evidence.
5. Appellant was not seen in the company of the accomplices at unusual times and at unreasonable hours, at or near the scenes of the crimes; in fact, he was not seen in Huntsville at all by any non-accomplice witnesses.
6. There was no evidence of a prior threat on appellant's part.
7. There is no actual evidence of flight on the part of the appellant.
Appellant's activities, in registering under an assumed name at a motel, raise a suspicion. But the mere raising of a suspicion is not enough. White v. State, 48 Ala.App. 111, 262 So.2d 313 (1972). Setting aside the accomplice's testimony, as we must do, we are left only with the suspicion that appellant participated in the murders, but we do not find one hard fact or circumstance which legitimately tends to connect him with the commission of the crime charged. The appellant's motion to exclude the State's evidence should have been granted. Refusal to do so entitles appellant to a new trial.
REVERSED AND REMANDED.
All the Judges concur.

ON REHEARING
PER CURIAM.
The Alabama Supreme Court recently reversed this Court's affirmance of a conviction in a case in which we considered the corroboration of an accomplice's testimony to be much stronger than in the instant case. Senn v. State (1977) Ala., 344 So.2d 192. In that case, the accomplice testified inter alia that Senn came by his home in a pickup truck the night of the crime, picked up the accomplice, and they drove to a nearby farm and stole a tractor. The Supreme Court stated, in pertinent part:
"Analyzing the testimony in the case at bar we have the following corroborative evidence:
"(1) Petitioner and accomplice Griffin were seen by the owner of the tractor about 1:30 or 2:00 p. m. on the day before the tractor turned up missing driving at a high rate of speed on a road petitioner seldom used and near where the tractor was parked; and,
"(2) Petitioner was seen by a witness at accomplice Griffin's house the evening before the tractor turned up missing when he picked up accomplice Griffin with whom he drove off.
"We are convinced that this testimony is not sufficient to corroborate the two accomplices.
"Other `corroborating' details mentioned in the opinion of the Court of Criminal Appeals are physical facts which simply corroborate the `commission of the offense' but do not tend to connect the petitioner therewith."
The State's evidence in the instant case simply corroborates details of the commission of the offense, but does not tend to connect the appellant therewith. Neither are we persuaded by the State's argument on rehearing that appellant was in "close proximity" to the scene of the crime because he was an out-of-state resident and was in "the very city of the crime, on the very date of the crime," with no apparent legitimate business in Huntsville. No legal precedent supports such a contention.
OPINION EXTENDED; APPLICATION OVERRULED.