[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 155 
Robbery when the victim is intentionally killed by the defendant — § 13-11-2 (a)(2), Code of Ala. 1975; sentence: death by electrocution.
Around 8:00 or 8:30 p.m. on December 23, 1978, Truman P. Johnston stopped his automobile on a downtown street in Anniston to make a telephone call from a telephone booth adjacent to an abandoned restaurant. He called his wife and requested that she meet him at Sears to get a Christmas present he had selected for her. Their conversation was interrupted when she heard what she thought to be a scuffle occurring at the other telephone. She heard a voice, which was not that of her husband, saying "come on" or "that's enough." She heard nothing else over the telephone after that. She and her son-in-law then drove to Sears looking for her husband. When they were unable to find him there, they drove around town until they saw his automobile parked in front of the telephone booth and abandoned restaurant.
The victim's son-in-law found him lying in a pool of blood behind the restaurant. The victim was still alive and was transported to a hospital in Birmingham where he died the next day. The State's evidence showed that the victim had been beaten about the head and face and that death was caused from gunshot wounds to the head.
Weldon Williams, in exchange for immunity from prosecution, testified essentially as set out below.
Around 3:30 or 4:00 p.m. on the date of the crime, Williams encountered the appellant at the home of the appellant's sister. He had known the appellant for the past ten years. Williams had been having an argument with his girl friend, and he asked the appellant to accompany him to her home. The two men left with Williams' sixteen-year-old brother Timothy. They stopped by a shoeshine parlor where the appellant procured what appeared to Williams to be a .38 caliber pistol from one Anthony Woods. They then carried Timothy Williams home and drove on to the home of Williams' girl friend. Upon arriving there Williams took the gun from the appellant, kicked in the door, returned the gun to the appellant, and then went upstairs. After a heated discussion with Williams' girl friend, he and the appellant left and drove to Williams' house where they again saw Anthony Woods. The appellant returned the gun to Woods at that time. After remaining there for about an hour, the appellant and Williams drove to the home of Anthony Woods' girl friend. It was just getting dark at that time. There they again encountered Woods, and the appellant borrowed the gun from Woods a second time. After staying there about forty-five minutes, Williams and the appellant left and headed toward Quintard Mall. Their route carried them south on Noble Street past the closed Old South Restaurant. It was there in a telephone booth adjacent to the restaurant that they saw the victim.
Williams testified that he and the appellant had no conversation about the victim or about the gun immediately prior to the crime. However, while stopped at a traffic light at the corner south of the restaurant, the appellant told Williams to turn the corner and park the car. Before Williams could do so, the appellant had exited the car and headed toward the telephone booth. Williams turned the car around, parked it, *Page 156 
got out, and started to follow the appellant. He saw the appellant with his arm around the victim's neck, pointing the gun at him, and backing him out of the telephone booth and around the corner of the restaurant. He then heard two shots fired, whereupon he turned and headed toward the car. Before he got there the appellant passed him in a trot. The appellant told him that he had to shoot because the victim resisted and also because the appellant did not want to be identified.
As the two moved toward their car, Williams noticed some traffic approaching them on Noble Street. The appellant told him to walk beyond their car until the traffic passed. Shortly thereafter they entered the car and continued to Quintard Mall. While in route the appellant gave Williams $40 which was half of the money he had taken from the victim. The appellant said he planned to use the victim's checkbook, and Williams replied that it would be best for the appellant to throw away all of the victim's personal effects.
Before reaching the mall they stopped at a convenience store to buy something to drink. While there Williams saw the appellant throw the victim's billfold and other personal effects behind the store. They then proceeded to Quintard Mall. While there they saw and talked to Jerry and Annette Jarrells.
Some time after leaving the mall, Williams and the appellant went to the home of Mary Heath where they again encountered Anthony Woods. The appellant returned the gun to Woods and told him that "he had just killed a guy with the gun."
Williams testified that he had no knowledge of the robbery before it happened. It was only after its completion that he was informed by the appellant of what transpired. On cross-examination Williams testified that he was not a participant in the commission of the crime, but based upon his knowledge of what happened he considered himself to be a part of it.
 I
The appellant contends that the State did not adduce sufficient corroborative evidence of Williams' testimony to sustain a conviction.
Section 12-21-222, Code of Ala. 1975, provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Assuming, arguendo, that Williams was an accomplice, the issue then is whether the State introduced other evidence independent of Williams' testimony tending to connect the appellant with the commission of the offense. We will therefore summarize only such of the State's evidence which was introduced for the purpose of corroborating Williams' testimony.
Timothy Williams, brother of Weldon Williams, testified that he was with his brother and the appellant "some time near Christmas" in 1978. He did not recall how close to Christmas it was. At first he did not recall the day of the week, but later said it was on a Saturday. The prosecutor asked, "Could this have been the Saturday before Christmas?" The witness answered, "Yes." Other evidence in the case proved that the crime was committed on the Saturday before that particular Christmas, on December 23, 1978.
Timothy Williams stated that he was with his brother and the appellant on that date "around about dinner time, 12:00, something like that." The location was at "Joshua's Shoe Shop" in Anniston. On that occasion the witness observed Anthony Woods give the appellant a gun (of some undesignated description), and the appellant put it in his pocket. The witness' brother and the appellant then took the witness home and left him, and he did not see the appellant again.
Detective Sergeant Walter Williams, of the Anniston Police Department, testified that on March 19, 1979, he interviewed *Page 157 
Weldon Williams concerning the instant offense. After that interview he, along with Lieutenant Gary Carroll, Weldon Williams and his attorney, went to the Quick Shop Convenience Store and discovered the various personal effects of the victim in a vacant lot behind the store. Sergeant Williams stated that the discovery of the items was accomplished through information provided by Williams.
Jerry Jarrells testified that he was with his wife at the Quintard Mall on the date in question and saw the appellant and Weldon Williams. Both were in the company of a third man whose identity was unknown to him. Jarrells stated that he and the appellant talked for approximately ten minutes. He later saw the appellant twice as the appellant walked through the mall; however, he could not recall the time at which that occurred other than it was near closing time.
Harold Turner testified that around 7:30 or 8:00 p.m. on December 23 he and his family were traveling north on Noble Street when he saw two black males walking north of the traffic light at the corner immediately south of the Old South Restaurant. He also saw an automobile identical in all respects to his father's with the exception of a radio antenna mounted on the trunk. He identified a photograph of the victim's car as the one he saw. Turner could not identify the appellant or Williams as either of the two men he had seen on that occasion.
The State's evidence concerning ballistics was inconclusive. The bullet removed from the victim had characteristics of being fired from a .38 caliber weapon, but no further information was ascertainable concerning the bullet or the gun from which it was fired. Furthermore, no weapon was ever found during the investigation so as to supply a test weapon for a ballistics comparison.
The State's evidence concerning possible fingerprint identification of the appellant proved useless. None of the appellant's fingerprints were found on any of the victim's personal effects which had been recovered by the police.
The method traditionally used by the courts of this state in analyzing the evidence to determine if there has been sufficient corroboration of an accomplice's testimony has been to first set aside that testimony and then determine if the remaining evidence tends to connect the defendant with the commission of the offense. Sorrell v. State, 249 Ala. 292,31 So.2d 82 (1947); Kimmons v. State, Ala.Cr.App., 343 So.2d 542
(1977). The corroborative evidence of an accomplice's testimony need only to legitimately connect the accused with the offense.Blackburn v. State, Ala.Cr.App., 372 So.2d 908 (1979). Such corroborative evidence need not be direct for circumstantial evidence is entitled to the same weight as direct evidence provided it points toward the guilt of the accused. Kelsoe v.State, Ala.Cr.App., 356 So.2d 735 (1978); McLaren v. State, Ala.Cr.App., 353 So.2d 24 (1977). Likewise, corroborative evidence need not be sufficiently strong of itself to support a conviction. The word "corroboration" has been defined to mean "strengthen," not necessarily to prove any specific fact testified to by the accomplice. Corroboration was generally not required at common law and, therefore, our statute requiring such is in derogation of the common law and must be strictly construed. Cunningham v. State 54 Ala. App. 656, 312 So.2d 62
(1975). The corroboration requirement is a statutory rule and not a constitutional right. Alexander v. State, 281 Ala. 457,204 So.2d 488 (1967).
In the instant case much of the State's evidence corroborated Williams' testimony only to the extent that it merely showed the commission of the offense or the circumstances of the offense, but failed to connect the appellant with its actual commission. For instance, details showing such things as the location of the offense, the guo modo of committing it, and where the personal effects of the victim were disposed of all substantiate the fact that the witness had a great deal of knowledge about the details of the offense. However, a mere recitation of the details of the crime *Page 158 
is insufficient if it fails to connect the accused with the offense. Senn v. State, Ala., 344 So.2d 192 (1977).
The finding of a still where an accomplice said an accused was making whiskey was insufficient to connect the accused with that crime. Alexander v. State, 20 Ala. App. 432, 102 So. 597
(1925). Likewise, finding stolen items where an accomplice said an accused hid them was insufficient corroboration in Lotz v.State, 23 Ala. App. 496, 129 So. 305 (1930). The reason for such a rule is obvious. The accomplice knows the details of the crime because he was present and a participant and can recite those details whether or not the accused was a participant in the offense.
In the instant case the fact that items were where the accomplice said they would be found in no way independently connects the accused with the offense. The accomplice Williams may have disposed of the victim's personal effects by himself and would certainly know their whereabouts. He likewise would know all the details of the shooting if he committed the crime and the appellant was not present. "This is why it is incumbent upon the State to present evidence independent of the accomplices' which connects the defendant to the commission of the crime. Else, any guilty party is apt to implicate an innocent party in exchange for a grant of immunity from prosecution." Lindhorst v. State, Ala.Cr.App., 346 So.2d 11, at 15 (1977), cert. denied, Ala., 346 So.2d 18.
Our legislature recognized a fact which has never been recognized in federal law — that a guilty party, when offered immunity from prosecution, will point an accusing finger in any direction to avoid prosecution. The more serious the penalty, the more likely a false accusation will occur. Thus, our legislature, in order to protect the innocent and to preserve the presumption of innocence, has required additional evidence for a conviction in such cases via § 12-21-222, supra.
With two exceptions, only the testimony of the accomplice Williams connects the appellant with the offense. Those two exceptions, however, are the testimony of Timothy Williams and that of Jerry Jarrells.
The testimony of Timothy Williams tends to corroborate the accomplice's statement that on the afternoon shorty before the crime the appellant obtained a pistol from Anthony Woods.
The testimony of Jerry Jarrells places the appellant with the accomplice shortly after the commission of the offense. Of course, being in the company of an accomplice in proximity in time or place to the commission of the offense is not always sufficient corroboration. In Kimmons, supra, this court stated at 547:
 "A more proper and correct statement of the rule is that the fact that at or about the time of the commission of the offense with which the accused is charged, he and the accomplice were together, in or near the place where the crime was committed, may, in conjunction with other facts and circumstances, sufficiently tend to connect the accused with the commission of the crime to furnish the necessary corroboration of the accomplice. . . . This conclusion is substantiated by a reading of those cases announcing the general rule. Additional facts and circumstances, however slight, must be adduced to support the testimony of the accomplice in addition to or in conjunction with those of proximity, chronologically and graphically, to the alleged offense in the association of an accomplice. . . ." (Citations omitted.)
In the instant case neither the testimony of Timothy Williams nor that of Jerry Jarrells standing alone would be sufficient corroboration of the accomplice's testimony. Neither would their testimony standing alone be sufficiently strong in and of itself to support a conviction. However, taken together we believe their testimony is sufficient to "strengthen" that of the accomplice Weldon Williams, thereby providing the necessary corroboration.
In Cunningham, supra, we stated at 54 Ala. App. at 659,312 So.2d at 64: *Page 159 
 "[T]he test to corroborate the accomplice's testimony is not that evidence independent of such testimony standing alone would prove the appellant committed the crime. The test rather is that there be independent evidence going to strengthen or fortify the statement of the accomplice which would tend to connect the appellant with the commission of the crime. . . ."
As in Cunningham, supra, we here find that the independent testimony of Jarrells and Timothy Williams meets the test of strengthening and making Weldon Williams' testimony believable and likewise tends to connect the appellant with the offense.
Timothy Williams' testimony placing the gun in the appellant's hands shortly before the offense (see Kelsoe, supra) in conjunction with "the facts of proximity and association" supplied by Jarrells' testimony sufficiently meets the test set out in Kimmons, supra.
We recognize the corroboration here to be slight; however, pursuant to those cases hereinabove set out and considering that the corroboration requirement is one created of statute in derogation of the common law rather than being constitutional in nature, we find no error on the part of the trial judge in overruling the appellant's motion to exclude the evidence.
 II The appellant contends that the prosecutor concealed the existence of an eyewitness to the crime whose testimony would have been materially favorable to the defense.
It appears that the defense first learned of the existence of the witness, Renea Hargrove, through a presentence investigation report submitted to the court by the State. The appellant filed a motion for a new trial which was overruled after a hearing. From the appellant's brief:
 "At the hearing Mrs. Hargrove took the stand and her testimony disclosed that on the night of the occurrence she was driving down Noble Street when she noticed three black men take a white man from a telephone booth at the deserted Old South Restaurant and `carry' him around the building, one black man on each side of the white man, and another black man following them. Mrs. Hargrove gave this information to the police the following week, but heard nothing further from them until she was served with a District Attorney's subpoena around 8:00 p.m. or 9:00 p.m., on May 20, 1979, the night before the trial was to commence the next morning. At this time she explained that she was leaving the next morning to attend her grandfather's funeral in Florida and would not be back in town until Tuesday or Wednesday. The district attorney was made aware of the situation and told Mrs. Hargrove to contact his office when she returned."
Mrs. Hargrove did not return in time to testify at the trial, and it is apparent that neither the appellant nor his counsel knew of her existence until after the trial had concluded. We find no lack of diligence on the part of the defense in failing to learn of the existence of the potential witness.
The rule applicable to the instant issue was set out by Justice Merrill in Nichols v. State, 267 Ala. 217,100 So.2d 750 (1958):
 "In order for a new trial to be granted on newly discovered evidence, the movant must show that the proffered evidence could not have been discovered before the trial by use of due diligence, that it was material and competent, not merely cumulative, and will probably change the result. . . .
 "The granting of a motion for a new trial was addressed to the sound discretion of the trial court and will not be revised on appeal unless it clearly appears that the discretion has been abused. . . ."
(Citations omitted.)
See also: United States v. Spivey, 508 F.2d 1061 (5th Cir. 1975).
In reviewing the testimony of Mrs. Hargrove given during the hearing on the motion for a new trial, we find it to be material to the ultimate issue in the case. However, *Page 160 
we also find her testimony to be merely cumulative or at most merely impeaching. We likewise find that her testimony was not such that on a new trial would probably change the result in bringing about an acquittal for the appellant.
The appellant contends that Mrs. Hargrove saw three black males at the scene of the crime. Her testimony on that point is equivocal. When asked if she was positive that she saw three men, she stated, "I know there was two; but I can't be sure about the third one. It looked like three." She likewise testified that she could not identify any of the men she saw on that occasion. She again reiterated that "it could have been just two, because it was dark and I didn't pay any attention."
Mrs. Hargrove's testimony is somewhat cumulative of other evidence given in the case concerning the time, location, and manner in which the robbery was committed. However, her testimony is likewise somewhat impeaching of that given by Weldon Williams. He testified that the appellant alone committed the robbery and killing, whereas Mrs. Hargrove's testimony indicates at least two and possibly three persons were involved in the crime. Her testimony however does not exculpate the appellant. She could not testify that the appellant was not one of the persons she observed in the apparent commission of the crime.
The testimony of the new witness would certainly have been beneficial to counsel for the appellant in preparing for cross-examination of Weldon Williams. However, the new witness' testimony was not such that would probably change the result in a new trial. That was the determination made by the trial judge, and we cannot say that he clearly abused his discretion in reaching that decision.
The appellant also contends that the prosecutor's failure to disclose the existence of Mrs. Hargrove as a material witness is cause for reversal pursuant to Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The United States Supreme Court in Brady stated:
 "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (Emphasis supplied.)
It is clear that Brady requires the production of evidence favorable to an accused when the accused makes a request for such. In the instant case, contrary to appellant's assertions in brief, we find no such request.
Appellant contends that "requests were made during trial for any exculpatory material in the possession of the prosecutor," but that none was disclosed. In the appellant's motion for a new trial, appellant contends that at the close of the State's case he made a motion requesting any "Brady material" that would be materially favorable to the accused. We do not find such a motion or a request in the record. At the end of the State's case in chief, defense counsel moved to exclude the State's evidence on grounds discussed in Section I, supra, but made no discovery motion. The record does reveal that during the course of cross-examining Weldon Williams defense counsel made the following request:
 "May it please the Court, I would say for the record, the prosecutor's office has kindly furnished us with one statement and at this time we request if there are any other statements this man [Weldon Williams] made we officially request we be allowed to see them and read them before continuing our examination."
After the prosecutor assured the court that the State possessed no other statements or tape recordings made by Williams, the matter was dropped.
There is no constitutional right to discovery in a criminal case, and Brady v. Maryland, supra, did not create one.Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837,51 L.Ed.2d 30 (1977). In the instant case there was no motion for discovery seeking the information which the defense now claims was suppressed. Brady, supra, therefore would not apply. Likewise *Page 161 
we find no suppression by the State of evidence tending to prove the innocence of the appellant which would amount to a denial of a fair trial. Here, we find only that the State failed, on its own motion, to apprise the defense of the name of a potential State's witness and the substance of her testimony. We find that conduct on the part of the prosecution to fall short of a constitutional violation. Weatherford v.Bursey, supra.
 III
When a witness admits being present at the scene of a crime, but denies any participation in the offense, a question of fact arises as to whether or not he was an accomplice. Yarber v.State, Ala., 375 So.2d 1229 (1978). Mere presence at the scene of a crime without more is insufficient to show complicity in the crime. Except where the State's evidence undisputedly makes a witness an accomplice, the defendant has the burden of showing the witness' complicity. Jacks v. State, Ala.Cr.App.,364 So.2d 397, cert. denied, Ala., 364 So.2d 406 (1978).
The trial judge in the instant case held as a matter of law that Weldon Williams was an accomplice. Counsel for the appellant made the same contention. The jury was charged to the same effect. The appellant makes no contention on appeal that the trial judge was in error in that regard. Whether the trial judge erroneously instructed the jury that Williams was an accomplice as a matter of law or whether he should have submitted that question to the jury for their determination results in no reversible error in the instant situation.
 "Whether a witness is an accomplice may be a question of law or fact. It becomes a question of law only where the court is clearly convinced by a preponderance of the evidence that the witness could have been indicted and convicted of the same charge for which the defendant is on trial and that the witness freely participated in the crime. Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the trial court. . . . Where a witness denies participation in the crime, the issue of his being an accomplice is a disputed fact presenting a question for the jury despite the additional fact that the witness previously had been convicted for the identical crime for which the defendant is on trial. . . ." Flanagan v. State, Ala.Cr.App., 369 So.2d 46 (1979).
It is unnecessary for this court to pass on whether the trial court erred in its determination that Williams was an accomplice. He was treated as an accomplice by the court, the prosecution, and the defense, and in so doing a greater burden of proof was placed upon the State in requiring independent corroboration of Williams' testimony. Pursuant to Rule 45A, Alabama Rules of Appellate Procedure, and §§ 12-22-240, -241, Code of Ala. 1975, this court must take notice of any "plain error" only where such error has or probably has adversely affected the substantial rights of the appellant. Thus, if the trial court committed any error in determining as a matter of law that Williams was an accomplice, such a ruling inured strongly to the favor of the appellant and against the State.
 IV
At the end of the sentencing hearing, the trial court set forth in writing extensive and complete findings of fact from the trial and sentencing hearing pursuant to § 13-11-4, Code of Ala. 1975. However, the court in enumerating aggravating circumstances found inter alia "that the killing of Truman P. Johnston was committed while the defendant was engaged in the commission of a robbery of Truman P. Johnston."
The crime charged consisted of two elements: (1) the robbery and (2) the intentional killing. An element of the offense charged cannot be used as an aggravating circumstance to that offense. In other words robbery cannot be used as an aggravating circumstance to the crime of capital robbery.Keller v. State, Ala.Cr.App., 380 So.2d 926 [1979]; Colley v.State, Ala.Cr.App., 405 So.2d 374 [1980]; Bufford *Page 162 v. State, Ala.Cr.App., 382 So.2d 1162 [1980]. Pursuant toJohnson v. State, Ala., 378 So.2d 1173 [1979], a remandment to the circuit court for a new sentencing hearing is mandated.
The conviction of the appellant is hereby affirmed, but the cause is remanded to the trial court with directions to conduct a rehearing for the purpose of sentencing in accord with this opinion and cases cited therein.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
All the Judges concur, except DeCARLO, J., concurs in the result only.